LYNCH *v.* STEPHENS.

Opinion delivered March 4, 1929.

*T. J. Gaughan, J. E. Gaughan* and *E. E. Godwin,* for appellant.

*J. S. McKnight,* for appellee.

MEHAFFY, J.   The appellants entered into a contract with the highway commissioners to construct a certain highway, designated as the Thornton-Hampton Road, State Project No. C115-53-A, appellants agreeing to furnish all materials necessary to build and construct the road.   Thereafter the appellants and appellee entered into the following contract:

"This contract made and entered into by and between Lynch & Hill Construction Company of Little Rock, Ark., hereinafter known as party of the first part, and T. A. Stephens of Pine Bluff, Ark., hereinafter known as party of the second part.

"Party of the first part hereby agrees to sublet to party of the second part the grubbing, clearing and excavation on the Hampton-Thornton Road, State Aid Project No. C115-53-A, Calhoun County, Arkansas, from station 187 x 00 to station 401 x 30 at the following unit prices:

Clearing _____$25.00 per acre.
Grubbing _____$75.00 per acre.
Excavation _____$0.22 per cubic yd.

"Party of the second part agrees to furnish all labor, tools, machinery and materials to complete the work to the entire and full satisfaction of the engineer in charge, and shall at all times be under his supervision.   Party of the first part is to pay to the party of the second part 85 per cent. monthly for the work done the previous month estimated by the engineer and paid for by the State Highway Department, the 15 per cent. to be retained until the work is completed, accepted and paid for by the Arkansas State Highway Department.

"It is further agreed that the Arkansas State Highway specifications be and hereby are made a part of this contract same as if written in.

"Given under our hands and seals this..............day of ........................, 1927.

"By T. A. Stephens.
"Lynch & Hill Contracting Co.
"By M. F. Hill."

"Witness, W. R. Mead."

The appellee had already begun work some time before they entered into the above written contract. The contract itself is not dated, but the testimony shows that it was made a month or more after appellee began work, and the work was begun about September 10, 1927. Appellee was then paid five installments on the estimates of the engineer. The last estimate, however, for $699.11, was not paid, and this suit was brought to collect the $699.11 and the 15 per cent. which was to be retained until the completion of the work. The suit was for $2,000.

The defendants answered, denying the material allegations in plaintiff's complaint; admitting, however, that they were engaged in the construction of the highway under a contract with the State Highway Commission, and that they had made a written contract with appellee, the contract above set out. They denied that they owed appellee anything for labor; alleged that appellee failed and refused to do further work, sold his teams and equipment, and placed himself in a position where he could not carry out his part of the contract; that they repeatedly requested him to comply with the contract, but he refused to do so, and they were compelled, under their contract with the State Highway Commission, to finish the work. They alleged they had been damaged in the sum of $3,000 by appellee's failure to perform the contract. They alleged that he failed to pay labor claims, and thereby caused suit to be filed against them, and they were damaged in this respect $500.

In addition to the $699.11 and the retained percentages, the testimony showed that appellee had removed dirt, for which he had no estimate, to the amount of $1,100.

After the appellee had been at work some time, he got sick, and sold his teams and outfit, intending to hire teams to finish the work. At the time he quit work the ditches were full of water, and it was impossible to work at that time. Appellee and one of the partners, Mr. Hill, discussed the matter, and appellee agreed to get somebody else to finish the work. He did not succeed in getting any one else, and the appellants notified him that the work must be finished at once or that appellants would have to put teams on it and charge it to appellee's account. This was on March 7. On March 24 appellants wrote appellee that it had become necessary to put teams on the work, and notified him to have a representative on the work to look after his interests, as he was aware that the cost of same would be charged to his account.

Appellee testified that they refused to pay him the $699.11 and retained percentages, and appellee did not put any representative on the job to look after his interest.

M. F. Hill, one of the partners, testified that they had 200 working days in which to complete the job. The contract with the Highway Department provided that the appellants should begin work within 10 days and complete the work within 200 working days thereafter, and that, for failure to complete the work within the time specified, they would pay damages at the rate of $15 per day; that this should be deducted from the final estimate. Hill testified that Stephens had been working about 30 days when they executed the contract with him, and that Hill never learned that Stephens had quit until the next day after he had given him the last check. After that, which was about the 20th of February, Hill never saw Stephens any more until the 20th of March, and Stephens told him that he would pick up some teams, and Hill suggested that Stephens hire Mr. Neil to finish the work, but Neil declined to do it unless Hill would agree to pay him. The total cost of completing the job, in addition to what they had paid Stephens, was $6,282.31, or a total cost of $12,511.70.

Hill also testified that, if Stephens worked some on station 401, he had no right to do so. He also testified that he had not paid him estimate No. 6, which was $699.11. He said he used that and the $1,120, or the percentages held back, to complete the work that Stephens was supposed to do.

Numbers of exhibits were introduced, and there was a trial by jury, and the jury returned a verdict for $699.11. Judgment was entered for this amount, and this appeal is prosecuted to reverse said judgment.

Appellants filed motion for a new trial, containing several paragraphs, but the motion was overruled, and exceptions saved.

Appellants, however, rely for reversal on two assignments of error. First, that the trial court erred in giving the jury, over appellant's objections and exceptions, appellee's instructions numbers 3 and 4. Instruction No. 3 is as follows:

"The court further instructs the jury that the burden rests upon the defendant, Lynch & Hill Construction Company, to show that the plaintiff, Stephens, broke his contract under which he was employed to build the road, or part hereof, in controversy in this action."

Instruction No. 4 complained of reads as follows:

"You are also instructed that, before you can find for the defendant, you must believe from the testimony not only that T. A. Stephens, the plaintiff, breached his contract, but you must further find from the evidence that the defendants, Lynch & Hill Construction Company, were damaged thereby."

The undisputed evidence in the case shows that appellants were indebted to appellee in the sum of $699.11 on estimate No. 6. The undisputed evidence also shows that there was due him $1,120, retained percentage for the work he had already done. Then the appellee testifies that he was entitled to $1,100, in addition to these sums, for dirt which he had removed and for which he had been given no credit.

Hill himself knew nothing about the amount that was paid out or the amount that was received on the Stephens job, but he introduced a statement made by the bookkeeper, which shows t h e amount paid out t o be $12,511.79. This was made by the bookkeeper, C. C. Craft, and subscribed and sworn to before Roy Martin, notary public. At the bottom of the statement, after the signature of the notary public, the following appears:

Total expenses ..............................................................$12,511.71

Total revenue................................................................ 11,290.81

Total loss to Lynch & Hill on T. A. Stephens contract ................................................... 1,220.89

Of course the above was not evidence. Where the bookkeeper got the figures is not shown, and it is not shown whether he knew anything about it or not. He did not testify, and the engineer did not testify, and nobody testified that they had received all coming to them from the Highway Department for the Stephens job. Appellants could very easily have had both their bookkeeper and their engineer to testify, and could have shown exactly what the cost of the job was, and also could have shown how much they received from the State, and could have shown very easily whether they had received all that they were to receive on the job, but they did not see proper to do this.

The testimony of Hill himself shows that Stephens had completed approximately 75 per cent. of the work that he was to do. Hill testified that the clearing was practically complete; that the estimates showed that the grubbing was complete. The engineer's estimate showed that the grubbing was 100 per cent. complete and that the excavation from stations 188 to 211 was 60 per cent. complete; that from stations 221 to 249 it was 75 per cent. complete; that from 255 to 315, 75 per cent. complete; that from 315 to 364, 90 per cent. complete; from 364 to 365.25, 60 per cent. complete; and from 366 to 401.48, 90 per cent. complete. The greater part of the work was from 75 to 90 per cent. complete. It shows also that the overhaul was complete, and yet if the statement

124

made by the bookkeeper and introduced in evidence is correct, the appellants paid as much money to do less than 25 per cent. of the work as Stephens had paid for more than 75 per cent. of it. The evidence that appellants owed appellee estimate No. 6, $699.11, and $1,120 retained percentages on the work he had already done, is undisputed, and there is no dispute that Stephens did the other work he testified about, and no dispute about the amount of it. Hill does not deny it, but simply says he had no business to work at that place.

While it is claimed that Stephens breached the contract, the undisputed proof shows that, at the time he quit, the conditions of the weather and the water in the ditches were such that it was impossible to do the work, and also that Stephens was sick, and that, when Stephens and Hill talked about the matter, Stephens told him that he was going to finish the work. Hill admits this, but Hill told Stephens that it would not be satisfactory for him to hire men and complete it like Stephens intended to, and that he had better get Mr. Neil, a man at the other end of the line, to finish it, and that he would see Neil. Stephens testifies that Hill promised to get Neil to do the work. Hill testifies that he promised to see Neil, and that Neil was willing to do the work if Hill would pay him for it, and Hill said he would not do this because he did not want to assume any obligations of Stephens. Just why he did not want to agree to pay Neil when he would have had to pay Stephens, or anybody else who did the work, is not explained. However, he did not employ him, but the contractors undertook to do the work themselves, and say that they completed it at the cost shown in the statement by the bookkeeper.

Hill does not claim that he made the estimates or that he made the statement introduced in evidence, but the undisputed proof shows that the estimates were made by the engineer, and it is claimed that the statement was made by the bookkeeper. The statement about the amount received, however, from the highway is not shown to have been made by any person, unless it may

be assumed that it was made by the bookkeeper because it is on the bottom of the statement which the bookkeeper apparently swore to. There is no explanation offered for the failure to put the engineer or the bookkeeper on the stand to testify, the only witnesses that could have testified about the amount of work done and the amount of money received.

"Where it is apparent that a party has the power to produce evidence of a more explicit, direct, and satisfactory character than that which he does introduce and relies on, it may be presumed that, if more satisfactory evidence had been given, it would have been detrimental to him, and would have laid open deficiencies in, and objections to, his case, which the more obscure and uncertain evidence did not disclose. * * * Failure of a party to call an available witness possessing peculiar knowledge concerning facts essential to a party's case, direct or rebutting, or to examine such witness as to the facts covered by his special knowledge, especially if the witness would naturally be favorable to the party's contention, relying instead upon the evidence of witnesses less familiar with the matter, gives rise to an inference that the testimony of such uninterrogated witness would not sustain the contention of the party." 22 C. J. 115-116. Wigmore on Evidence, vol. 1 (2 ed.), 584 *et seq.*

There is no dispute about the plaintiff's claim of the $669.11, and practically no dispute about the rest of his claim, and there is no dispute about the fact that the appellant finished the work. There is no evidence, however, about what the cost was, except the statement of the engineer, which was not sworn to, the engineer not testifying, and there is no evidence of the amount appellant received from the Highway Department except Hill's statement, and he concedes that he has no personal knowledge, and the only thing he knows about it is what he learned from the bookkeeper and the bookkeeper's statement. These were all questions of fact, and it was the province of the jury to determine what the indebtedness was and the amount that had been paid. And they had

a right to infer, from the failure to put the engineer and bookkeeper on the stand, that their testimony would not have been favorable to appellant. At any rate there is ample evidence to sustain the verdict of the jury as to the amount of the indebtedness.

Appellant's next contention is that the trial court erred in giving instructions Nos. 3 and 4 to the jury. These instructions have already been set out. Instruction No. 3 was not prejudicial. The appellants themselves contended, not only that Stephens broke the contract, but that they had been damaged by reason of the breach of the contract, and of course the burden of proof was on them to show that he had breached the contract.

No. 4 simply tells the jury that, before they can find for the defendant, they must find not only that Stephens breached the contract, but that appellants had been damaged thereby. This was a correct instruction under the facts in this case. Appellants, however, argue that this instruction was erroneous, because the plaintiff must allege and prove an offer to comply with the agreement or a sufficient excuse for not doing so. This is correct where there is a breach of an entire contract.

"Persons suing on an entire contract must usually allege and prove either a performance himself or a readiness and willingness and ability to perform." 6 R. C. L. 943 *et seq.*

But contracts are construed as other written instruments. The purpose in interpreting or construing a contract or written instrument of any kind is to ascertain the intention of the parties in making the contract. The contract in this case provided for payments on estimates of the engineer as the work progressed, and provided for retaining 15 per cent. until the work was completed. It was therefore the intention of the parties, as expressed by the contract itself, that there would not have to be a performance of the entire contract to entitle appellee to recover. He was entitled to recover as the work progressed.

"For instance, there is a class of cases in which the services are, from their very nature, accepted from day to day, as the labor progresses, and where the benefit of the labor must necessarily be regarded as accepted and the benefits thereof appropriated by the employer, who, notwithstanding the fact he will not be liable upon the special contract, will nevertheless be held liable by many courts to pay the fair value of the benefits resulting from the partial performance of the contract. In this class of cases the underlying principle seems to be that, although the contract calls for a continuous service, the parties have agreed in advance to an apportionment of the contract and an acceptance of the service as it shall be rendered from day to day, and that the performance of the whole labor is not to be treated as a condition precedent to the employer's obligation to pay, unless the parties expressly stipulate that it shall be by providing that nothing shall be earned until the whole service is performed." 6 R. C. L. 973.

However, in the instant case, the undisputed proof shows that the appellee told the appellant that he intended to finish the work by hiring persons and teams. The appellant said that this was not satisfactory, and suggested that he hire a man mentioned by the appellant, and agreed himself to see the party about finishing the work. He did not hire him because the man did not want to do the work without pay, and appellant said he did not want to be responsible for Stephens' contract. But he did advise the appellee that he had taken charge of the work himself, and was going to charge the cost of it up to appellee. Appellee acquiesced in this, and this constituted a new agreement by which both parties are bound.

We find no error, and the judgment of the circuit court is affirmed.