ABBOTT *v.* PROTHRO.

5-1324                                    307 S. W. 2d 225

Opinion delivered November 11, 1957.
[Rehearing denied December 16, 1957.]

*T. O. Abbott, pro se,* and *Spencer & Spencer,* for appellant.

*Surrey E. Gilliam & Melvin E. Mayfield,* for appellee.

GEORGE ROSE SMITH, J. This is a boundary line dispute involving a strip of land forty feet in width. The suit was brought by the appellant Abbott, who asked for a decree quieting his title to the land in controversy. The appellees answered with an assertion of title in themselves and asked that their own title be quieted. At the trial the questions presented were chiefly issues of fact. The chancellor entered a decree dismissing Abbott's complaint and confirming the Prothros' title.

The parties own lands lying on opposite sides of a concrete highway in Union county, the appellees' property being a forty-acre tract east of the highway and the appellant's property being a smaller platted block on the west side of the paved road. The two tracts abut along the entire length of the appellant's east boundary, which is a north-south line 312.50 feet long. Abbott contends that this common boundary line runs approximately down the center of the concrete pavement. The appellees assert that the boundary is a line that parallels the highway forty feet to the west and that now coincides with a row of utility poles along the western edge of the cleared public easement. Alternatively, the appellees insist that the line they contend for has been established by agreement or acquiescence on the part of former owners of the two tracts.

On the first point, the actual position of the true line, the evidence preponderates decidedly in favor of the appellant. Here the only problem is that of determining the correct location of the line which, according to the original government survey, divides the forty acres now owned by the Prothros from the adjoining forty acres to the west, of which Abbott's land is a part. The only surveyor to testify, J. C. Godwin, was called as a witness by the appellant. Godwin's survey shows that the disputed line runs along the center of the concrete

pavement, as Abbott contends. We have studied Godwin's testimony closely and find it altogether convincing.

The appellees, citing *Stevens* v. *French,* 227 Ark. 864, 302 S. W. 2d 286, argue that Godwin's survey should be disregarded because he took as his starting point a concrete monument which he thought to have been set by the county authorities. Godwin's measurements, however, tied in with several other established monuments and cannot be said to rest upon guess and speculation, as was the situation in the *Stevens* case. Furthermore, Godwin's survey is corroborated by a recorded plat of Abbott's property, prepared by a deceased county surveyor, and by a mark which that surveyor chiseled into the concrete highway at the point which Godwin fixes as the northwest corner of the Prothros' forty acres. In addition to this confirmation of Godwin's testimony it is shown that the appellees employed three different surveyors (including Godwin himself) to survey the line before the trial. The appellees' failure to produce these men as witnesses suggests, of course, that their testimony would have been unfavorable.

On the second point, concerning the existence of a line by acquiescence or agreement, the appellees' proof shows that for many years there existed a belief in the neighborhood that the northwest corner of the appellees' tract lay forty feet west of the point that has now been fixed as its true location. This supposed corner, where four forty-acre tracts were thought to intersect, has been marked for the past twenty or thirty years by an iron blade set in the ground and before that by other visible monuments. There may well have been a generally accepted belief that these ancient landmarks correctly attested the location of the corner in question. That belief, however, is shown by this record to have been erroneous, and the tangible evidence on the ground related only to a point, not to a line. Perhaps the landowners assumed that the line now in controversy could be determined by running due south from this supposed corner, but it is not shown that such a line was

agreed upon or that it was physically marked on the ground and confirmed by possession with reference to it. Thus the essential elements of a valid oral boundary line agreement are absent. *Peebles* v. *McDonald,* 208 Ark. 834, 188 S. W. 2d 289.

Nor does this proof establish an agreed line by acquiescence. A similar situation was considered in *Ball* v. *Messmore,* 226 Ark. 256, 289 S. W. 2d 183, where a stream or branch had long been mistakenly thought to be the true line. There we said: "In claiming more land than the chancellor awarded them the appellants rely upon the testimony of several witnesses who say that the branch has long been understood to be the line. This testimony may be true, but it falls short of establishing a record title, or adverse possession, or an agreed boundary line, or any other fact of substantive importance. It shows at most the existence of a general belief about the line, but of course such a belief could not have the effect of vesting or divesting the title to real property."

Reversed.