64 Wn.2d 756 (1964)
394 P.2d 218
THE STATE OF WASHINGTON, Respondent,
v.
WASHINGTON HORSE BREEDERS ASSOCIATION et al., Respondents,
LOUIS DIAMOND et al., Appellants.[*]
No. 37052.
The Supreme Court of Washington, Department Two.
July 16, 1964.
Lycette, Diamond & Sylvester and Simon Wampold, for appellants.
The Attorney General, Robert E. Lundgaard and Joseph S. Montecucco, Assistants, for respondent.
FINLEY, J.
This condemnation action raises questions concerning the use by the landowner-condemnee and the intentional nonuse by the state of expert real estate appraisers *757 hired by the state. A question is also raised as to the right of the state to open and close in presenting argument to the jury; and lastly, there is a question concerning the propriety of instructions to the jury to value several lots as one tract.
The landowners appeal from a jury verdict setting the value of their land  six lots in one tract in downtown Seattle  at $494,000. The testimony at trial concerning fair market value was provided by five expert witnesses, two of whom were produced by the state and three by the landowners. The values set by these appraisers are as follows:

 State's Appraisers
 Hall ................................... $494,500
 McQuigg ................................ 482,000
 Owners' Appraisers
 Keppler ................................ $771,250
 Eastman ................................ 730,800
 Downie ................................. 752,300

The state used only Hall and McQuigg at the trial; however, they were apparently not the persons who were originally employed to evaluate the landowners' property. Approximately 2 years prior to trial, a Mr. Walls and a Mr. Ballaine were hired to appraise the property on behalf of the state. Their reports were accepted in 1960, and they were ordered to "update" their estimates in June 1962, just prior to trial. These June 1962 estimates were, allegedly, unsatisfactory to the state, leading to the dismissal of Walls and Ballaine and the employment of Hall and McQuigg, who made the new and different estimates used at the trial.
When the state went to trial in October 1962, it produced the testimony of McQuigg and Hall, and rested. Thereafter, the landowners offered to prove the circumstances to the jury, showing that the state had engaged in "witness shopping." They also claimed, in a somewhat vague manner, the right to call this rejected state appraiser as their own witness, making it clear that the purpose was to identify him as initially hired by the state, but rejected when the state found his estimate too high. The trial judge refused to allow counsel for the landowners (1) to make any "witness *758 shopping" comments to the jury, or (2) to identify appraisers (who were not used) as having been hired originally by the state. The trial court further ruled that neither of the appraisers rejected by the state could be used by the landowners unless the appraisers were prepared to swear that the entire appraisal offered was done at the expense of the landowner alone; i.e., that none of the work product paid for by the state could be offered on the stand on behalf of the landowners. There rulings apparently destroyed the strategic value of the rejected appraisers to the landowners, and they were not called as witnesses.
The appellants assign error to each of the above rulings by the trial court, with particular emphasis upon the refusal to allow them to call the rejected experts as their own witnesses. In reference to this latter point, the ruling of the court was as follows:
"What you could do ... [is] hire these men as your appraisers and have them start all over again and give their testimony as to values, but they then would be in the position that they would have to swear, under oath, that they were working for you and they didn't use anything that they used for the State. They couldn't take the State's appraisal and then be hired by you and add on to them, what you want them to do....
"... If you were in a situation where you had no other appraisers and these were the only two, then you might be in a situation where justice demands it. But this all comes down to a question of fairness. There isn't any reason in the world that you need this testimony to prove your case."
It is apparent, therefore, that the ruling does not, as appellants suggest, enable the state to maintain a practice of hiring appraisers to prevent landowners' access to them, whether or not they are ultimately used. The landowner here was not denied access to the individual skills of the appraisers formerly in the employ of the state, but was instead only prevented from making use of the work product and estimate material, generated at state expense. As the landowners evidenced no interest in the appraisers under these conditions, the witnesses were properly dismissed.
*759 [1] Whether or not appraisals made at state expense under the above circumstances should be made available to the landowners is a matter which must rest within the discretion of the trial court. No rule of law should prevent the use of such material and witnesses by either party, with the consequent savings in delay and expense, whenever it can be accomplished without undue prejudice to the parties. In the present case, the trial judge properly considered both the ample quantity of expert opinion already possessed by the landowners and the high probability that the connection between the state and the rejected appraisers would have proved impossible to conceal if the experts had testified fully concerning the manner in which their estimates were made. Even conceding the remote possibility that the landowners desired to make use of the individual appraisers, irrespective of their connection with the state, it may be noted that they made no request for a continuance  obviously necessary to take advantage of the trial court's ruling. In light of the foregoing, we are unable to say that there was an abuse of discretion by the trial judge in rejecting the proffered testimony of the former state appraisers. Swope v. Seattle (1904), 36 Wash. 113, 78 Pac. 607.
[2] We likewise find no error in the exclusion of testimony and other evidence or argument which would have indicated to the jury that an appraiser, hired by the state, was not called as a witness, allegedly, for setting too high an estimated value on the land being condemned. Such "bid shopping," if it exists, might well be questionable on ethical grounds when accomplished as a general or frequent practice by an agency of the state charged with the duty to pay "fair value" for the land it takes. However, we are aware of no rule of law or policy prohibiting it. The trial judge is in a position far superior to that of this court to weigh the prejudicial nature of the evidence, and to balance that against its probative value, and the likelihood of prejudice to the landowner in the exclusion of such evidence. The admission or exclusion of the offered evidence, we think, is a matter necessarily involving the exercise of judgment and discretion, and, the trial judge having made the determination, *760 this court will not interfere on appeal. McCormick, Evidence § 152, p. 319 (1954).
The landowners' final assignments of error concern the rejection of an instruction regarding the "plottage value" of the land and the procedure in condemnation cases in Washington allowing the state the privilege of opening and closing in the presentation of argument to the jury.
[3] The witnesses of the appellants testified that the property had a greater value than ordinary, because it comprised six lots, combined in one ownership and available in one piece, in downtown Seattle. The landowners, in view of this, requested that the jury be instructed to value the property "on the basis of the common ownership by the respondents of the tract as a whole." Error is assigned to the failure to give such instruction, even though the jury was fully apprised in other instructions of its duty to consider all factors in reaching full market value of the property. We are referred to no authority, nor have we found any, which would establish as a matter of law that "plotting value" is so peculiar an element of value as to be singled out by instructions separate from the general instructions regarding market value. No reason is suggested why the presentation of the element through expert testimony would be in any way insufficient to enable the jury to arrive at its determination.
[4] That the state is accorded, in a condemnation action, the right to open and close in argument is the long established procedure in this state. Bellingham Bay & British Columbia R. Co. v. Strand (1892), 4 Wash. 311, 30 Pac. 144. Although we are aware of some theoretical difficulty in this position, we are not here disposed to unsettle a procedure of such long standing by a reconsideration of the rule.
The judgment of the trial court is affirmed in all respects.
OTT, C.J., DONWORTH and WEAVER, JJ., and DENNEY, J. Pro Tem., concur.
NOTES
[*] Reported in 394 P. (2d) 218.