Evelyn McLENDON *v.* Dick JOHNSTON Jr. et ux

5-4295                                                    419 S. W. 2d 309

Opinion delivered October 16, 1967

*W. H. Daggett,* for appellant.

*Harold Sharpe,* for appellees.

George Rose Smith, Justice. The appellant, Mrs. McLendon, and the appellees, Johnston and his wife, own adjoining lands in Marianna. In 1965 Mrs. Mc-

Lendon began the construction of a house that eventually proved to encroach by about 3.4 feet upon the lot-and-a-half to which the Johnstons have record title. At about the time the house was completed the Johnstons brought this suit to compel Mrs. McLendon to remove the encroachment. This appeal is from a mandatory injunction granting the relief prayed. For reversal Mrs. McLendon relies upon adverse possession and estoppel.

There is hardly any dispute about the facts. Mrs. McLendon formerly owned all three of the contiguous lots now in question. In 1952, when all the lots were unimproved, she sold the north lot-and-a-half to a Mr. Bronson, whose title later passed to Ronald May. In 1954 May built the house that is now owned and occupied by the appellees.

The present controversy really stems from May's having built a picket fence that lacked several feet of being on the true boundary line between his property and that of Mrs. McLendon. May's fencing ran south along part of his back boundary line and then turned east and continued for about two thirds of the distance to the street in front of the house. The illusion that the fence marked the true boundary was doubtless compounded by the fact that the sidewalk in front of May's house was paved only to the point at which it would have intersected the fence if the fence had been extended to the east line of May's land.

When the Johnstons bought their house in 1962 they were told that the east-west fence was not on the line—that they were getting a strip on the other side. By then the east-west part of the fence had deteriorated, and Johnston removed it long before Mrs. McLendon began to build a house on her land. Mrs. McLendon testified that she "understood" that the fence had been on the boundary. Her contractor accordingly ran a string from the end of the Johnstons' sidewalk to the end of the Johnstons' back fence and positioned the new

house with reference to that line. There is no dispute about the fact that the McLendon house does encroach upon the Johnstons' property to a distance of 3.4 feet.

We may dispose quickly of the appellant's claim of adverse possession. Until she began to improve her lots in 1965 they were vacant and unenclosed. Hence her assertion of title by adverse possession rests solely upon the fact that her neighbor placed his fence decidedly short of the common boundary. It is firmly settled, however, that "a landowner who puts his fence inside his boundary line does not thereby lose title to the strip on the other side. That loss would occur only if his neighbor should take possession of the strip and hold it for the required number of years." *Brown Paper Mill Co.* v. *Warnix,* 222 Ark. 417, 259 S. W. 2d 495 (1953). Here there is no semblance of actual hostile possession on the part of the appellant.

Upon the remaining issue the evidence falls short of establishing an estoppel. There is no explicit or convincing proof that either the Johnstons or their predecessors in title ever represented to Mrs. McLendon that the lateral picket fence was actually on the boundary line. Johnston testified that when he first noticed that the McLendon house was being built he told the contractor about his own understanding of the boundary line. Johnston states that he got no satisfaction from the contractor, who said that the Cline & Frazier Company had surveyed the lot. Neither the contractor nor the surveyor was called to contradict Johnston's testimony. Later on Johnston employed his own surveyor to determine the true line and promptly filed suit when it turned out that an encroachment existed. There was no want of diligence on his part.

On the other hand, Mrs. McLendon was not free from fault in the matter. She is an experienced builder, having erected and sold about ten houses in the neighborhood. Yet in this instance she made no apparent effort to determine the boundary line with accuracy. She

admits that she paid $45 for a survey that was made by Cline & Frazier at the behest of her contractor, but the record contains neither the survey nor any testimony about what it disclosed. We must assume that the missing evidence would be unfavorable to Mrs. McLendon's position. *Mutual Relief Assn.* v. *Weatherly,* 172 Ark. 991, 291 S. W. 74 (1927). Her contractor, according to Johnston's uncontradicted testimony, was told about the possibility of an encroachment, but he apparently failed to pass the information on to Mrs. McLendon. Upon the record as a whole we find no sound basis for holding that the Johnstons should be estopped from complaining of a mistake that was primarily the result of Mrs. McLendon's own oversight. In similar circumstances we have directed that a mandatory injunction issue for the removal of the purpresture. *Jernigan* v. *Baker,* 221 Ark. 54, 251 S. W. 2d 999 (1952) ; *Leffingwell* v. *Glendenning,* 218 Ark. 767, 238 S. W. 2d 942 (1951). Such cases control this one.

Affirmed.