SOUTHERN FARM BUREAU CASUALTY INSURANCE
COMPANY v. FRANK McGIBBONEY

5-4737                                          436 S.W. 2d 824

Opinion Delivered January 27, 1969
[Rehearing denied March 3, 1969.]

*Hodges, Hodges & Hodges* for appellant.

*Lightle & Tedder* for appellee.

GEORGE ROSE SMITH, Justice.   In a case decided in 1967 the appellee, Frank McGibboney, obtained a $1,350 judgment against Raymond Reed as damages arising from a traffic collision.   *Reed* v. *McGibboney*, 243 Ark. 789, 422 S.W. 2d 115 (1967).   Under our direct action statute, Ark. Stat. Ann. § 66-4001 (Repl. 1966), McGibboney brought this suit against Southern Farm Bureau Casualty Insurance Company, which is alleged to have been Reed's liability insurance carrier on the date of the collision, August 23, 1965.

Southern Farm denied liability on the ground that Reed's policy expired on July 18, 1965, and was not reinstated until August 25—two days after the accident. The trial court, sitting without a jury, took the case under advisement and later entered judgment for the plaintiff upon a general finding that "Policy #320934, insuring Raymond Reed, was in force on August 23, 1965."   Upon such a general finding the case stands as if a properly instructed jury had returned a verdict for the appellee.   *Blass* v. *Anderson*, 57 Ark. 483, 22 S.W. 94 (1893).   Hence the single question here is whether there is substantial evidence to support the trial court's finding of fact.

Before discussing the merits of the case we pause to answer the appellant's contention that the venue should have been laid in Randolph county, where Reed lives, rather than in White county, where McGibboney lives.   The objection was waived, because Southern Farm entered its appearance by filing a general demurrer to the complaint before raising any question about the venue.   *Murdock Acceptance Corp.* v. *Speer*, 225 Ark. 948, 286 S.W. 2d 485 (1956); *Greer* v. *Newbill*, 89 Ark. 509, 117 S.W. 531 (1909).

On the merits it is possible that the trial court reached its general conclusion upon any or all of three findings of fact:   (a) That Reed paid the premium on August 2, 1965, thereby reinstating the policy; (b) that

the company should have applied funds in its possession, belonging to Reed, to pay the premium when it became due; and (c) that the company itself elected to treat the policy as having been reinstated as of August 21, 1965—two days before the accident occurred. We find the third ground to be a sufficient basis for the trial court's judgment and therefore confine our discussion to that point.

Reed was in the insurance business at Pocahontas and had been Southern Farm's agent for several years. He admittedly received notice that the liability policy on his Ford car expired on July 18, 1965. On August 25—two days after the accident—he sent a check to the company for the premium, with an application for reinstatement.

On the following day the company executed what appears to have been a printed form entitled Amended Declaration. That instrument identified Reed's policy and recited that the declarations in the policy were amended to provide that the term of the policy "shall be from the effective date August 25, 1965 to February 25, 1966 12:01 A.M. . . . and for such succeeding terms of six calendar months hereafter as the required renewal premium is paid by the insured on or before the expiration of the current term and accepted by the Company." It is recognized by both litigants that the foregoing Amended Declaration effectively reinstated the policy as of August 25, 1965.

In October of that year Reed bought a second car, a Rambler. Under the company's regulations Reed was entitled to a reduced premium rate upon each vehicle if he carried a policy on each one. On the first car the reduction would take effect when the policy was renewed at the expiration of its six-month term, in February, 1966.

Reed accordingly applied for liability coverage on the Rambler. The company issued a policy on that car

and also executed and sent to Reed another Amended Declaration with respect to the first policy, which recited that the term of the policy "shall be from the effective date 08/21/65 to 02/25/66 12:01 A.M.," etc., and that the renewal premium would be $26.75 (instead of $29.50). It will be noted that under this amended declaration the term of the policy began on August 21.

Southern Farm insists that the insertion of the date 08/21/65 was a mistake on its part and that the instrument should be construed to read 08/25/65, as in the earlier amended declaration. Ordinarily such a defense would be raised by a motion to transfer the case to equity, where the company would have the burden of proving its right to reformation by clear and convincing proof of a mutual mistake. *Calvert Fire Ins. Co.* v. *Hardwicke*, 232 Ark. 466, 338 S.W. 2d 329 (1960); *Arkansas Mut. Fire Ins. Co.* v. *Witham*, 82 Ark. 226, 101 S.W. 721 (1907). On the other hand, the contention can also be made in a court of law, in which case the plea is not for an actual reformation of the contract but rather for an interpretation of its meaning in the light of all the attendant circumstances. Restatement, Contracts, § 507 (1932).

At the outset it is clear that McGibboney made a prima facie case when he introduced the second amended declaration, which expressly fixed August 21 as the effective date of the contract. The burden of overcoming the plaintiff's prima facie showing then shifted to the defendant. In this court the question is whether the company's rebutting proof is so conclusive that a jury of fairminded men would be forced to believe that the August 21 date should be disregarded as a mere typographical error.

We do not find the proof to be that conclusive. The controverted date, August 21, does not appear *only* in the second amended declaration, a copy of which was sent to the insured and relied upon by him. The cor-

rected date was also inserted in ink in the company's file copy of the earlier amended declaration. It seems to be inherently unlikely that a mere typographical error would have been deliberately entered upon the earlier record.

Some explanation was evidently called for, but the insurer's proof in that respect is markedly deficient. The only witness called to testify about the matter was Jack L. Simmons, the company's office manager. Simmons had nothing whatever to do with the actual mistake, if there was one. He testified: "In looking at the figures, not having made this change myself, all I can do is try to determine what the coding clerk did ... The only thing I can determine, she made a clerical error." It is significant that the coding clerk, who alone appears to have had firsthand information about the matter, was not called as a witness, giving rise to an inference that her testimony would have been unfavorable to the insurer. *National Life Co.* v. *Brennecke,* 195 Ark. 1088, 115 S.W. 2d 855 (1938). On the record as a whole we cannot say that there is no substantial evidence to support the trial court's finding of fact.

Counsel for the appellee are allowed an additional fee of $300 for their services on appeal.

Affirmed.

FOGLEMAN, J., disqualified.

BROWN and JONES, JJ., dissent.