## ARKANSAS STATE HIGHWAY COMMISSION *v.*
### Eargle PHILLIPS, et ux

5-5769                                    478 S.W. 2d 27

Opinion delivered March 27, 1972

*Thomas B. Keys* and *Philip N. Gowen*, for appellant.

*W. B. Howard* and *Jack Segars*, for appellee.

JOHN A. FOGLEMAN, Justice. Appellant contends that we should reverse the judgment in favor of the appellee landowner in this eminent domain case because the circuit judge permitted appellee to call as a witness H. K. McMurrough, a staff appraiser employed by appellant and to show, through his testimony, that he had made an appraisal of the property involved for appellant but was not being called as witness on its behalf. The trial court's ruling on appellant's objection, in pertinent part, was:

> * * *the witness, McMurrough, may be called to the stand and may be asked questions which would bring out any factual observations that he may have made, assuming that he did make an appraisal of this property.

> * * *Counsel for the landowners will be permitted to identify McMurrough with reference to his past and present employment; will be permitted to inquire as to, whether or not, he did submit an opinion as to his valuation of the property concerned; but will not be permitted to ask him in dollars and cents what this submission consisted of.

> In making this ruling, I am mindful that under the Arkansas law that where a witness is available to a party and by reason of his employment subject to the party's direction and control, a failure to call that witness, with reference to any fact in issue, creates what has been stated to be a presumption that his testimony would be adverse to the party who could have called him. It appears to me that, that which is referred to as a "presumption" is not a presumption of law, but is rather a presumption of fact, which is rebuttable and would be more properly termed an inference.* * *

The suit was filed June 27, 1968, and on the same date the court granted appellant immediate possession upon a finding that compensation estimated to be just by appellant had been filed in the registry of the court. That estimate as to the lands involved here was

stated in appellant's declaration of taking as $2,250. In September 1968, the court granted appellees' petition for payment of the deposit to them, stating specifically that the payment was made without prejudice to appellees' contention that they were entitled to additional compensation or to appellant's right to contend, if it should so elect, that the tracts in question have a value of less than $2,250.

The court's ruling was made after a hearing upon appellant's motion to quash a subpoena issued for McMurrough by appellees. That motion simply raised the objection that appellees had failed to tender fees to the witness for travel and expenses for loss of time from his occupation. An oral objection was then made to appellees' attorney asking the witness to answer questions as an expert, without payment of an expert witness fee. Appellees' counsel then stated that he did not propose to ask the witness any questions relating to his current professional opinion, but planned to ask McMurrough if he had not made the original appraisal of the tract, and, if so, the amount of estimated just compensation he reported to the highway department, and the information he furnished to it and whether appellant had told him not to appear as a witness at this trial and a previous one, unless coerced. Appellant then stated that it was proper for appellees to ask the witness to state his opinion, but not to ask him to identify his employer or to otherwise disclose that McMurrough worked for the highway department.

The court's ruling was then made, but the court first ordered that ordinary witness fees be tendered. At the trial the state contended that benefits to appellees' remaining lands in the unit from which some 8.36 acres were taken exceed the damages suffered.

Appellees showed by McMurrough's testimony: the property lines of the unit involved, that the witness had made an appraisal before the suit was filed which was submitted to his superiors in the highway department, and that the highway commission did not subpoena him or direct him to appear at the trial. On direct

examination the witness also told of his initial and subsequent inspections of the property, of his making a market study and doing record research on values and of contacting the landowners. No objection was made to any inquiry on direct examination.

Appellant's counsel cross-examined the witness without any reservation of objections. The cross-examination revealed that his original appraisal made February 28, 1968, had been revised in May 1968. Appellant's attorney then inquired whether he had checked specific sales. On redirect examination, the witness disclosed that he had used three comparable sales in making his appraisal, one of which was a contract by appellees to sell two acres at $3,000 per acre. Answers were also given to questions about three other sales. Again there was no objection by appellant to any question or answer. We find that the court's action was not reversible error and affirm.

The trial of any lawsuit, fundamentally, should be a search for truth. The eminent circuit judge was correct in stating the effect of our holdings relating to the failure of a party to call as a witness one peculiarly available to him who is, or should be, possessed of knowledge material to an issue in the case. *Abbott* v. *Prothro,* 228 Ark. 230, 307 S.W. 2d 225. *Broomfield* v. *Broomfield,* 242 Ark. 355, 413 S.W. 2d 657. *Lynch* v. *Stephens,* 179 Ark. 118, 14 S.W. 2d 257; *McLendon* v. *Johnson,* 243 Ark. 218, 419 S.W. 2d 309; *Saliba* v. *Saliba,* 178 Ark. 250, 11 S.W. 2d 774; *Southern Farm Bureau Cas. Ins. Co.* v. *McGibboney,* 245 Ark. 1016, 436 S.W. 2d 824; *Reliable Life Insurance Co.* v. *Elby,* 247 Ark. 514, 446 S.W. 2d 215; *Jones* v. *Jones,* 227 Ark. 836, 301 S.W. 2d 737; *Rutherford* v. *Casey,* 190 Ark. 79, 77 S.W. 2d 58; *United States Bond & Mortgage Co.* v. *Reddick,* 199 Ark. 82, 133 S.W. 2d 23. See also, *Farmer* v. *Smith,* 227 Ark. 638, 300 S.W. 2d 937. In *Broomfield,* we said that the unexplained failure of a party to produce a witness with special knowledge of a transaction raises a presumption (or inference) that the testimony would be unfavorable, citing *Rutherford* v. *Casey,* supra;

*Jones* v. *Jones,* supra; and *National Life Company* v. *Brennecke,* 195 Ark. 1088, 115 S.W. 2d 855.

In some of these decisions the peculiar knowledge of the witness was based upon his particular qualifications or expertise in certain fields qualifying him to have the knowledge of matters pertinent to the issues and to evaluate and interpret facts discovered by him. Witnesses such as this are expert witnesses who aid the jury to draw an intelligent conclusion on the issues. *City of Jonesboro* v. *Pribble,* 112 Ark. 554, 166 S.W. 576; *Shaver* v. *Parsons Feed & Farm Supply, Inc.,* 230 Ark. 357, 322 S.W. 2d 690; *Fireman's Ins. Co.* v. *Little,* 189 Ark. 640, 72 S.W. 2d 777; *St. Louis, I. M. & S. Ry. Co* v. *Keefe,* 113 Ark. 215, 168 S.W. 131; *Equitable Life Assurance Society* v. *Barton,* 192 Ark. 984, 96 S.W. 2d 480; *H. Rouw Co.* v. *American Ry. Exp. Co.,* 173 Ark. 84, 291 S.W. 1001; *Dardanelle Bridge & Turnpike Co.* v. *Croom,* 95 Ark. 284, 129 S.W. 280, 30 L.R.A. (n.s.) 360; *T. & C. Ins. Co.* v. *Fouke,* 94 Ark. 358, 127 S.W. 461. See also, *Nelson* v. *Busby,* 246 Ark. 247, 437 S.W. 2d 799; 31 Am. Jur. 2d 511, et seq., Expert and Opinion Witnesses, §§ 16, 17, 18.

Professor Wigmore has treated the subject of conduct as evidence of consciousness of a weak cause. II Wigmore on Evidence (Third Edition, 1940) 119, et seq., § 277. He says that such evidence would have to be confined to the conduct of parties in the cause, "since for them it would at any rate be receivable as an admission; for any assertion by an opponent in the cause may be offered against him as an implied admission." Page 119, § 277. He mentions conduct of criminal defendants and then adds:

But the sort of conduct in question—suppression of evidence, bribery of witnesses, non-production of evidence, and the like—is a matter of law receivable equally against civil parties, and must therefore be treated in the light of this broader use.

It is enough, then, for practical purposes to note that this kind of conduct, though circumstantial in

its nature, is guarded against evidential misuse as hearsay by using it, in *civil cases, only when predicated of the party opponent, i. e.,* only when it could be treated as an admission;* * *

So far as regards the nature of the conduct which is open to this inference, all that can be said, in generalizing, is that there are broadly two sorts,

first, conduct indicating a consciousness of the *weakness of the cause in general,*—bribery, destruction of evidence, and the like;

and, secondly, conduct indicating a consciousness of the weakness of a *specific element in the cause,*— failure to produce a particular witness or a document, and the like.

In the former (§§ 278—284) the inference is an indefinite one, that the whole cause must be an unfounded one since such means are employed to sustain it; in the latter (§§ 285—292), the inference is a definite one, that the specific witness or document bears unfavorably on the cause.

As to the failure to produce evidence Professor Wigmore, page 162, § 285, then says:

The consciousness indicated by conduct may be, not an indefinite one affecting the weakness of the cause at large, but a specific one concerning the defects of a *particular element* in the cause. The failure to bring before the tribunal some circumstance, document, or witness, when either the party himself or his opponent claims that the facts would thereby be elucidated, serves to indicate, as the most natural inference, that the party fears to do so, and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party. These inferences, to be sure, cannot fairly be made except upon certain conditions; and they are also open always to explanation by circumstances which make some

other hypothesis a more natural one than the party's fear of exposure. But the propriety of such an inference in general is not doubted.

The author then reaches the particular field of expert testimony, page 177, et seq., § 290, stating:

> The kind of witness or evidence is immaterial. The inference, for example, may be drawn from a failure to use *expert testimony,* or a failure to employ *experiments* or samples or like instructive evidence.
> * * *

> In any event, the party affected by the inference may of course *explain* it away by showing circumstances which otherwise account for his failure to produce the witness. There should be no limitation on his right to explain, except that the trial judge is to be satisfied that the circumstances thus offered would, in ordinary logic and experience, furnish a plausible reason for non-production.

> The *inference* (supposing the failure of evidence not to be explained away) is of course that the tenor of the specific unproduced evidence would be *contrary to the party's case,* or at least would not support it. In other words, the inference does not affect indefinitely the merits of the whole cause, as it does when fraudulent conduct is involved (*ante,* § 277), but affects specifically and only the evidence in question.

It seems clear from the treatment given the subject by Professor Wigmore that evidence of conduct of the party in failing to call a witness is admissible. We have found no case that treats the particular question posed here as to the method of introducing this evidence of non-production of an expert witness on market value. Yet there are precedents closely enough related to indicate the propriety of the trial court's action. In its first approach to the problem the Michigan Supreme Court, in *Cooley* v. *Foltz,* 85 Mich. 47, 48 N.W. 176 (1891), a personal injury action, said:

Plaintiff introduced one physician, known as an "eclectic," and who had never graduated at any regular school of medicine, who testified to her injuries. The defendant then introduced two physicians as witnesses who had been called to treat her both before and after the alleged trouble with the defendant. They obtained no knowlegde of her ailments and condition except what they had obtained in their professional capacity. This testimony was objected to as inadmissible under How. St. § 7516. The objection was well taken, and the testimony should have been excluded. Breisenmeister v. Supreme Lodge, (Mich.) 45 N. W. Rep. 977, and authorities there cited. The entire subject is there fully discussed, rendering further mention here unnecessary. The defendant evidently recognizes the error, as he has filed no brief in this court. In the event of a new trial it is proper to say that it was competent for the defense to introduce these witnesses, and prove by them that they had been called by the plaintiff to examine and prescribe for her. The failure of the plaintiff to produce them as witnesses was a legitimate fact for the jury in determining the merits of the case. One of the physicians testified that after he had been called by the plaintiff, and had examined her, she told him that she had sued Mr. Folz, and there was going to be a lawsuit over it, and that she would want him as a witness. This testimony had no reference to her condition, and was competent. Such statements are not within the statute.

Later, that court applied this precedent in finding error in the refusal of an instruction, in *Vergin* v. *City of Saginaw*, 125 Mich. 499, 84 N.W. 1075 (1901), saying:

The defendant's counsel presented the following request: "It appears from the testimony that Drs. Sample and McGregor made examinations of the plaintiff a short time after she claims to have been injured. Dr. McGregor made two examinations, and Dr. Sample made one examination. They were for the purpose of ascertaining her physical condition.

The plaintiff has not called these witnesses. Her failure to produce them may be given such weight by you as you see fit." The record discloses that the facts are correctly stated in the request.

In *McKim* v. *Foley,* 170 Mass. 426, 49 N.E. 625 (1898), the defendant's denial that he signed a bond made the genuineness of his signature the principal issue in the case. It was disclosed on cross-examination of the defendant over his objection to the specific inquiry, that two handwriting experts had examined the alleged signature in his behalf. It was there contended that the trial judge erred in permitting the testimony, in instructing the jury that it might give such weight as it thought proper to the fact that the defendant had caused the bond to be examined by two experts who were not called to testify, and in permitting the plaintiff's counsel to comment upon defendant's failure to call upon these witnesses to testify as to their opinions on the subject. The specific contention on appeal was that there should be a distinction between cases when the witnesses not called were experts who could only express an opinion, and those in which they are witnesses to material facts. As grounds for the distinction, it was urged that a party could never know whether the trial judge would find the witnesses qualified and that no evidence of the qualifications of these alleged experts was ever offered, that courts do not ordinarily compel the attendance of experts upon the payment of statutory fees and the party may not be able to afford the expense of procuring their attendance, and that sometimes the witnesses are not willing to express a definite opinion. In rejecting these arguments, the court said:

The practice of permitting counsel to comment on the failure of the opposing party to call witnesses to facts needs to be used with caution, and such comments should be permitted only where it appears that the witnesses could have been procured, and it is a fair inference from the conduct of the party, under all the circumstances, that he knew or believed that the testimony of the witnesses would be adverse, and for that reason did not produce them. Com. v.

Finnerty, 148 Mass. 162, 167, 19 N.E. 215. Greater caution undoubtedly should be used in permitting any such comment where the witnesses are experts. But it may happen that the experts were well known, and have been present in court, and have been consulted frequently by a party and his counsel during the trial, and yet they are not called. In such a case, and in others which can easily be supposed, it might be a fair inference that the party did not call them as witnesses because he knew their testimony would be adverse. In such matters a good deal must be left to the discretion of the justice presiding at the trial. Exceptions overruled.

We have actually applied the rule favored by Wigmore to expert witnesses without having given specific recognition to it. In *Watts* v. *State*, 222 Ark. 427, 261 S.W. 2d 402, the identity of a rapist was the material issue. The defendant made efforts to obtain an FBI report disclosing the result of comparisons of hairs found on a hood worn by the guilty person and those taken from the defendant's head after his arrest. These efforts were unsuccessful because the trial court ruled that the filing of the reports would not be required because they were not admissible in evidence. On trial a state's witness testified in response to questions by defendant's counsel that some of the defendant's hair had been taken and sent, along with hair taken from the hood, to the FBI. The court sustained the state's objection to defendant's question as to the substance of the FBI report and instructed the jury to disregard any testimony as to a comparative examination of hair. We reversed, upon authority of holdings permitting argument that failure of a party to produce witnessess to whom material facts were known or to produce available competent evidence, when it is peculiarly within the power of that party to do so, creates a presumption that the evidence, if produced, would be unfavorable. We said:

We are not holding that the defendant was entitled to the F.B.I. report; but we are holding that the Trial Court committed prejudicial error in ruling out all the evidence about there being such

a report concerning the comparison of the defendant's hair with the hair found in the hood worn by the assailant. Such ruling by the Trial Court prevented the defendant's counsel from arguing to the Jury anything about the failure of the State to offer the most definite evidence of identity that was available in this case. * * *

When the Court told the Jury to "disregard any testimony about an investigative or comparative report", the Court thereby prevented the defendant's counsel from commenting to the Jury on the failure of the State to present the evidence the State might have offered regarding identity. The defendant was entitled to have his court-appointed counsel allowed to argue to the Jury on the failure of the State to offer such evidence and the Court's ruling precluded such argument.

In *Watts,* we clearly recognized the right of a litigant to offer evidence to show that his adversary was not producing testimony of expert witnesses consulted by him.

In *Chicago, R. I. & P. Ry. Co.* v. *King,* 210 Ark. 872, 197 S.W. 2d 931, there is inferential recognition of the propriety of evidence of non-production of medical experts. We said:

Appellants also contend that the failure of appellee to produce the testimony of the army physicians who treated his injuries raises a presumption that such testimony would have been unfavorable to appellee and would not have substantiated his claim for injuries. Appellants rely on the rule announced in Rutherford v. Casey, 190 Ark. 79, 77 S.W. 2d 58, 61, as follows: "The failure to produce evidence within the party's control raises the presumption that if produced, it would operate against him, and every intendment will be in favor of the opposite party." The proof in the case at bar does not show whether the testimony of these army doctors was available to appellee, and it cannot be said

that such evidence was within his control under the aforementioned rule.

As a matter of fact while no discussion of any objections to testimony about the existence of witnesses not called is included in our own cases hereinabove cited in support of the general rules, it is obvious that the evidence came from some witness, and actually it is obvious that without such evidence there is not the remotest possibility that the inference could ever be applied. For example: in *Lynch* v. *Stephens,* the failure of a highway contractor sued by a subcontractor for an estimate due and retained percentages to call as witnesses his bookkeeper and engineer was said to justify an inference by the jury that their testimony would not have been favorable to the contractor; in *McLendon* v. *Johnston,* we assumed that the testimony about a survey relating to a boundary line was unfavorable to the party who admitted that she had paid surveyors to make it but failed to introduce either the survey or any testimony about it; in *Saliba* v. *Saliba,* an instruction to the jury that if either party had withheld any evidence under his control the law presumed that it would be against him if it had been introduced, was approved where a defendant having knowledge of the facts failed to testify and it was disclosed that only one of four witnesses who saw the accident involved testified in the case; in *McGibboney,* the existence of the insurance company's coding clerk, who was not called, was disclosed through the testimony of the company's office manager; in *Abbot* v. *Prothro,* the opinion recites ". . .it is shown that the appellees employed three different surveyors. . .to survey the line before the trial"; in *Jones,* we referred to the failure to account for the absence of the witness; in *Rutherford* v. *Casey,* where the defendant testified that he sent certain bonds to a Mrs. Shephard in St. Louis, we said:

> The failure to produce evidence within the party's control raises the presumption that if produced, it would operate against him, and every intendment will be in favor of the opposite party. Kirby v. Tallmadge, 160 U. S. 379, 16 S. Ct. 349, 40 L. Ed. 463;

Johnson v. Mary Levy and Brother, 109 La. 1036, 34 So. 68; Chicago and W. I. Ry. Co. v. Newell, 113 Ill. App. 263; Choctaw & Mem. Ry. Co. v. Newton (C.C.A.) 140 F. 225.

No reason is given by appellant for not producing Mrs. Shephard. After the appellant had testified as to when and where and the manner in which he mailed the securities to her, and the evidence showing that there is no record of such transaction, and the evidence also showing that Mrs. Shephard was not at the Chase Hotel, his failure to produce Mrs. Shephard raises the presumption that if produced, she would testify against him.

We have found no Arkansas case where the evidence was brought to the jury through the medium of the expert. Eminent domain cases involving the admission of this type of evidence are scarce. It has been held that the admission or exclusion of evidence that an appraiser employed by the state in an eminent domain action was not called as a witness lies in the sound judicial discretion of the trial judge, whose determination will not be interfered with on an appeal. See *State* v. *Washington*, 64 Wash. 2d 756, 394 P. 2d 218 (1964). On the other hand, the Texas Supreme Court has held that one party in an eminent domain proceeding cannot prove the names of appraisers engaged by the other to appraise the property but not called as witnesses in order to lay the predicate for a comment in argument on their failure to testify, even though he might call any such appraiser as a witness to testify as to his value opinions, but not to show by whom he was employed to either bolster his credibility or to create the impression that the adverse party was suppressing evidence. *Boyles* v. *Houston Lighting & Power Co.*, 464 S.W. 2d 359 (Tex. 1971). In that case it was held that the trial court correctly excluded cross-examination of a landowner's value witness to disclose the names of other appraisers who had appraised the property at the request of the landowner.

We can see no sound reason why the evidence as to failure of a party to produce an expert consulted by him cannot be shown by the witness rather than through the party himself or some other witness called by the party. This method particularly should be available when the party itself is inanimate and cannot be called to establish the facts.

Regardless of whether the identity of appraisers employed but not called as witnesses by the adverse party may be shown as a matter of right or only when permitted by the trial judge in the exercise of a sound judicial discretion, we could not say that there was any error in the ruling in this case. Of course, in either approach, the party who had engaged the appraiser should have the right to offer evidence to explain his failure to call any witness whose identity is thus disclosed.

The judgment is affirmed.

HARRIS C. J., GEORGE ROSE SMITH and JONES, JJ., dissent.

GEORGE ROSE SMITH, Justice, dissenting. I would reverse this judgment. In simple fairness a party ought not to be permitted to show, as the appellees did in the trial court, that his adversary has failed to call as a witness an expert whom his adversary employed merely for the purpose of obtaining an opinion. If such testimony has any effect at all, other than its intended purpose to arouse an attitude of passion and prejudice in the jury room, that effect is completely outweighed by reasons of policy for not admitting such proof and by the weight of authority elsewhere.

First, the testimony obviously is of no direct aid to the jury. Their problem is to arrive at the value of the property, in dollars and cents. To inform them that the highway department has not called to the witness stand one of its appraisers who has appraised the property cannot be of any assistance to the jury in reaching a dollars-and-cents verdict. Such proof merely arouses

prejudice. By analogy, there is doubtless some slight probative value in testimony showing that a defendant later made repairs to the instrumentality involved in the accident in controversy, or in testimony showing what happened during the deliberations of the jury. But that slight probative value is demonstrably overbalanced by the policy considerations against the use of such evidence. That should be our holding here.

Secondly, on the record before us there is no reason to suspect any wrongdoing on the part of the highway department or its attorneys. Ordinarily a condemnor first makes an effort to purchase the desired property or right-of-way, rather than resorting at the outset to an eminent domain proceeding. There is clearly nothing wrong in the condemnor's decision to send three of its appraisers, instead of only one, to view the property, before beginning to negotiate for its purchase. Presumably the landowner does exactly the same thing. Yet there is certainly no duty on either side to bring into court the appraiser whose opinion was the least favorable to the party employing him. Yet the majority opinion not only implies the existence of such a duty; it actually penalizes a litigant for not trying his lawsuit in what his attorneys believe to be the most advantageous and ethical procedure for their client.

Thirdly, it is no answer to say, as the majority do, that the party employing the appraiser has the right to explain the failure to call him as a witness. When the party and his attorney have done nothing wrong, they ought not to be put in the unfair position of having to prove the negative, by proving their innocence. An attorney may have many perfectly valid reasons for not calling the appraiser whose valuation was least favorable to his client. The attorney may simply conclude, in good faith, that the particular expert's opinion is not as well founded as that of another appraiser. He may think that the particular appraiser would not handle himself well on the witness stand. He may learn that the particular appraiser has been to some extent discredited in an earlier trial in the same courtroom (a situation that

was before us recently). Such reasons, though perfectly valid, are not readily explainable to a jury.

Moreover, the very attempt to explain raises collateral issues that are a waste of time and expense for all concerned. Yet the majority's opinion will encourage that waste. This case, as a precedent, cannot be limited to real estate appraisers employed by the highway department. It will apply to the landowner's appraisers. It will apply to both the plaintiff and the defendant in personal injury cases, where they obtain more than one expert medical opinion before trial. It will apply to all cases involving expert opinion testimony.

Finally, the better reasoned cases are against today's decision. The exact nature of the inference that arises when a party fails to call a particular witness has been expressed in countless different ways. McCormick puts the matter in the simplest possible terms by saying that the inference arises "[w]hen it would be natural under the circumstances to call a particular witness." McCormick on Evidence, § 249 (1954). Caution must be used in allowing such an inference to be injected into a case. *Schoenberg* v. *Commissioner of Internal Revenue,* 8th Cir., 302 F. 2d 416 (1962); *Grady* v. *Collins Transp. Co.,* 341 Mass. 502, 170 N.E. 2d 725 (1960).

I can find no clearcut holding that such evidence is admissible. Certainly the Arkansas cases cited by the majority do not require such a result. In *Abbott* v. *Prothro,* 228 Ark. 230, 307 S.W. 2d 225 (1957), the litigant had employed three different surveyors to survey a particular line. A surveyor is an expert, but he testifies to facts, not to opinions. In *Broomfield* v. *Broomfield,* 242 Ark. 355, 413 S.W. 2d 657 (1967), the witness who was not called was actually a party to the suit and, according to her codefendant, supposedly had relevant information about the case.

The case most clearly similar to this one is *State* v. *Biggers,* 360 S.W. 2d 516 (1962), which was cited and followed in the later Texas case cited by the majority.

There the court, in answering the identical arguments now made by the appellees, had this to say:

> [W]e are not to be understood as holding that the trial court erred in refusing to permit respondents to prove by the witness, or independently, that the witness was employed by the State Highway Department to make an appraisal of the property, that his appraisal was made for the State Highway Department, or that he was paid by the State Highway Department for making the appraisal. That proof could have no relevancy to the issues in the case. As we view the matter, its tender could only be for the purpose of supporting the credibility of the witness or of creating the impression with the jury that the State was suppressing evidence. It would not be admissible for either purpose. By calling Crowley to testify respondents make him their witness, and once his competency as an expert is established, they have no right to shore up his credibility until he is impeached or his credibility attacked. [Cases cited.] And a decision not to call as a witness one employed to investigate and evaluate facts and report an expert opinion *is not a suppression of evidence.* [My italics.]

In the Washington case cited by the majority, *State v. Washington Horse Breeders Assn.,* the proffered evidence was excluded by the trial court. That decision was affirmed, the court saying that the question involved the exercise of discretion by the trial judge. A similar point of view was taken in *Epstein* v. *City and County of Denver,* 133 Colo. 104, 293 P. 2d 308 (1956), where the court, in affirming the trial court's decision to exclude the evidence, said:

> The jury was obligated to determine the value of the subject property upon the evidence before it under the instructions of the court, and could not indulge in surmises or speculation concerning what might or might not have been the result of an appraisal by some person or persons not produced as witnesses in the cause.

In Kentucky the point arose in a will contest when one side attempted to show that the other side had employed a handwriting expert without using him as a witness. With no reference to discretion, the court held the proffered proof to be inadmissible, saying:

> Concerning the evidence that the appellees did not use as a witness a handwriting expert they had employed, the appellant seeks to invoke the rule that, where a party does not produce material evidence in his possession and under his control, there is a presumption that the evidence would be unfavorable to him. We are not aware that his rule has ever been applied to an expert witness whose testimony would be merely an opinion. In addition, the witness was available to the appellant, and his testimony therefore was not within the possession and under the control of the appellees, within the meaning of the rule. [*Whitcomb* v. *Whitcomb*, 267 S.W. 2d 400 (Ky. 1954).]

I do not mean to imply that the unfavorable inference in question can never arise with respect to a party's failure to call an expert witness. Of course it can, as in the familiar situation in which an injured plaintiff fails to call the physician who has been treating him. That situation, however, falls within McCormick's statement, that it would be natural for the party to call the particular witness. It is an entirely different thing to permit a litigant to introduce proof not otherwise in the case, for the deliberate purpose of creating an atmosphere of passion and prejudice in the jury room. I would hold such testimony to be inadmissible; or, if any discretion can be said to be involved, I would hold that it was abused in the court below.

HARRIS, C.J., and JONES, J, join in this dissent.