FINANCIAL SECURITY LIFE ASSURANCE CO.
*v.* ELLIS E. WRIGHT ET UX

73-35                                            496 S.W. 2d 358

Opinion delivered July 2, 1973

*Pope, Pratt, Shamburger, Buffalo & Ross,* by: *Donald J. West,* for appellant.

*E. L. Holloway,* for appellees.

JOHN A. FOGLEMAN, Justice. This case involves claims under two hospital insurance policies issued to appellees at different times by appellant and by a company whose business was purchased and assumed by appellant. The record in this case is confusing both as to the background facts and allegations of coverage under the policies. As we understand the record, appellees were issued a hospital and surgical policy by the American International Life Insurance Company of Little Rock (hereinafter referred to by its number, H-1030) effective September 13, 1962, with semi-annual premium payments of $73.80. This policy was assumed by appellant on January 15, 1968, as evidenced by an "Assumption Certificate." A similar policy (No. HB-1722) was issued by appellant to appellees bearing the date of March 13, 1969, with semi-annual premiums of $109.40.

The claims asserted by appellees were based upon illness, surgery and hospitalization undergone by Hattie

E. Wright, wife of the named insured, Ellis Wright, from July 17, 1969, through July 22, 1969, and from August 13, 1969, through October 11, 1969. The record is not clear as to the specific nature of her malady, but the medical and hospital bills reveal that surgery was involved and that the need for surgery resulted from some arthritic or other orthopedic condition.

Suit was brought August 5, 1970, by appellees for recovery of $6,549.09, which they claimed to be due under the policies, along with a penalty of 12% and attorney's fees. Appellant answered by general denial, and by an amended answer admitted liability in the amount of $978.75 under one policy, having previously tendered $138 under policy H-1030. Appellees amended their complaint, itemizing the amount allegedly due under the two policies for a revised total of $2,186.24. Appellant answered the amended complaint by again admitting liability under one policy for $978.75 and eventually tendered that amount into court.

The case was tried before a jury which returned a verdict in the exact amount sought in the amended complaint. From the judgment for that amount plus 12% penalty and an attorney's fee, appellant brings this appeal alleging four points for reversal or modification. The first point deals with the sufficiency of the evidence to support the jury's verdict, and, specifically, appellant contends that there was no substantial evidence to support a conclusion that both policies were in force at the time of the hospitalization as alleged in appellees' complaint. Even though appellees had been issued two policies, numbers H-1030 and HB-1722, appellant contended at trial that the second policy, HB-1722, superseded the first, and introduced a form entitled "Replacement Endorsement," said to have been attached to the policy when issued, reading as follows:

This policy replaces coverage extended under policy no. *H-1030* based on information contained in the application herefor with the assumption that all representations are true and correct.

Should any claim arise that has its origin prior to the effective date as shown hereon, the submitted claim

will be processed and computed under that policy that was in force on or immediately prior to the effective date as shown on the face of this policy.

Appellant also introduced what it contended to be a "receipt" given by one J. Kelly to the appellees, allegedly when Kelly had sold policy HB-1722 to them, and the appellees had paid the first premium. The "receipt" was nothing more than a printed circular describing the benefits available under a policy offered by appellant, bearing a handwritten statement scrawled across the top which stated: "Received $109.40 for first six months starting 3/13/69. Replaces No. H-1030 dated 9/13/62 /s/ J. Kelly" The appellant's chief operating officer also testified that the company records showed that HB-1722 replaced H-1030 and that no premiums had been paid on H-1030 since the issuance of HB-1722.

The appellees claimed the premium on the first policy had been paid, but did not offer any canceled check, receipt, or other documentary evidence in support of this contention. However, both Mr. and Mrs. Wright did testify directly that the premium had been paid. Mrs. Wright testified that she herself wrote the check to pay this premium and stated that the receipt or check was at home. Wright testified that the canceled check might be at home. He apparently referred to a personal expenditure summary when testifying about this payment. Appellant asserts for the first time on appeal that this testimony and the reference by Mrs. Wright to a personal expenditure summary violated the "best evidence rule." This contention might very well be correct in the abstract, but it is axiomatic that we cannot consider the erroneous admission or exclusion of evidence on appeal where there has been neither a general nor a specific objection to the evidence offered to the trial court.

The narrow question on which we must decide this point is whether there was any substantial evidence that the premiums had been paid on both policies, so that both were in effect. The testimony of appellees leaves much to be desired in the way of clarity and consistency, and may well have been attacked for want of credibility. Resolution of the question depended upon whether the Wrights or appellant's employees were to be believed, and the

jury apparently felt constrained to accept the word of 65-year-old Wright, a 30-year resident of Clay County, where he has been a school teacher during all those years. On the other hand, appellant's chief operating officer, Charles Selman, admitted that he could not state positively that the replacement endorsement was on policy HB-1722 when it was delivered to Wright, and could only testify that the records of the company kept in the regular course of business did not reflect a payment of the premium on policy H-1030 which would have kept that policy in force after March 13, 1969. On the other hand, both appellees testified that the later policy bore no such endorsement. Furthermore, in spite of testimony of the Wrights about the payment of the premium on the first policy and the payment of a full premium on the new policy and their denial that the second was issued as a replacement, J. Kelly was not called as a witness for appellant in spite of the fact that appellant's attorney announced that he was present and would testify. The jury would have been justified in inferring that Kelly's testimony would have been unfavorable to appellant. *Southern Farm Ins. Co.* v. *McGibboney,* 245 Ark. 1016, 436 S.W. 2d 824. See also, *Reliable Life Ins. Co.* v. *Elby,* 247 Ark. 514, 446 S.W. 2d 215; *Abbott* v. *Prothro,* 228 Ark. 230, 307 S.W. 2d 225; *Jones* v. *Jones,* 227 Ark. 836, 301 S.W. 2d 737. Regardless of doubts we may entertain on the matter of credibility, we cannot say that the version of the Wrights was so inherently improbable as to render their testimony insubstantial.

Appellant's second contention is that the trial court erred in failing to strike appellees' exhibits 1 and 2 (the American International Policy and the Assumption Certificate of Financial Security Life Assurance Company) and in failing to grant appellant a directed verdict. As we read these contentions, they are necessarily answered by our ruling of appellant's first point. In order to sustain appellant on this point, we would have to hold as a matter of law that policy HB-1722 replaced H-1030, and that appellant's tender of $978.75 satisfied all legitimate claims of appellees thereunder. This we cannot do because of the factors discussed in treating the first point.

Next, appellant contends that the court erred in allowing the 12% penalty and attorney's fee and that the

jury award was in excess of the maximum benefits payable even if both policies were in force. Appellant hypothecates alternative theories to support this contention. The first theory is that, if both policies were in force, the "Assumption Certificate" did not apply, and policy HB-1722 is taken subject to its exclusions and limitations provisions, and since the malady suffered by appellee was one subject to a standard six-month exclusion, there can be no recovery under HB-1722, and the limit of coverage for H-1030 is $1,116.78, the amount admitted by appellant to be due. We do not agree with this theory for the simple reason that the record is not clear as to the exact nature of appellee's illness. The burden is on the insurer to plead as an affirmative defense and prove that the occurrence on which a claim is based comes within a specific policy exclusion or exception. *Riverside Insurance Company of America* v. *McGlothin,* 231 Ark. 764, 332 S.W. 2d 486; *Bankers National Insurance Company* v. *Hemby,* 217 Ark. 749, 233 S.W. 2d 637; *Life & Cas. Ins. Co. of Tennessee* v. *Barefield,* 187 Ark. 676, 61 S.W. 2d 698, aff'd 291 U.S. 575, 54 S. Ct. 486, 78 L. Ed. 999 (1934). See also, *Lynch* v. *Travelers Indemnity Company,* 452 F. 2d 1065 (8th Cir. 1972). For this reason and for reasons hereinabove set out in treatment of appellant's first point, we must assume that both policies were in force and that the exclusions and exceptions of policy HB-1722 were not applicable. Appellant's second theory is based on this assumption, i.e., it contends that, even if both policies were in force, without the exclusions and exceptions, the jury award was excessive by $69.49. We agree with this contention but are unable to reconcile the figures with appellant's calculations.

In order to understand our result, we set forth portions of the amended complaint of appellees. They sought to recover the following items:

| | |
|---|---:|
| Operating Room | $ 123.00 |
| Room rent (65 days at $10 per day) | 650.00 |
| Anesthesia | 50.00 |
| X-ray | 113.00 |
| Blood | 25.00 |
| Dressing and cast | 295.24 |
| Physical therapy | 185.00 |
| Drugs, Lab and Medicine | 250.00 |

| | |
|---|---:|
| Emergency Room | 10.00 |
| Metabolism | 15.00 |
| Doctor's Examination | |
| (5 days at $7.00 per day) | 35.00 |
| Surgery[1] | 400.00 |
| | $ 2,186.24 |

When the coverage provisions of the two policies are considered together the jury could have found that the total amounts for room rent, blood, dressings and casts and metabolism tests were covered by policy H-1030. Anesthesia, physical therapy, emergency room and surgery were likewise within the policy limits of HB-1722. Although H-1030 had a policy limit of $20.00 for x-rays, the jury could have found that the $93.00 difference was covered by the HB-1722 policy provision covering x-rays, drugs, lab and medicine which had a maximum limit of $250.00. However, the balance of $157.00 under this provision plus the $25.00 maximum for medicine in policy H-1030 plus the $15.00 maximum for laboratory in H-1030 was insufficient by $53.00 to cover the $250.00 claim for drugs, lab and medicine. Also, the hospital bill ·exhibited in support of the claim of appellees shows a debt for operating room expense which is $10.00 less than that claimed by appellees. Appellees apparently are trying to combine a $10.00 recovery room fee shown on the hospital bill with the operating room charge. There also is some dispute as to the $35.00 claim for doctor's calls, but we treat appellant's statements in its brief and in the record admitting liability for $150.00 under the various provisions for doctor's visits to include the $35.00 claimed by appellees. Thus we find it impossible for the jury to have awarded the full amount of appellees' claims under the clear terms of the policies.

This $63.00 difference necessitates a denial of the award of 12% penalty and attorney's fee. We have uniformly held that the statute allowing the penalty and attorney fee award is penal in nature and must be strictly construed, which requires that a party must recover the full amount

[1]Although it is unclear just what surgery was performed on appellee, the jury could have found that the surgery was subject to an omnibus clause in the policy allowing coverage for unscheduled operations to a maximum of $400.00.

sued for in order to obtain the benefit of the statute. *Smith* v. *U. S. F. & G. Co.,* 239 Ark. 984, 395 S.W. 2d 749.

The final contention of appellant deals with an alleged error of the trial court in the computation of interest and in the time from which interest should run. We agree with the appellant on the basis of our holding in *Old Republic Ins. Co.* v. *Alexander,* 245 Ark. 1029, 436 S.W. 2d 829. There we said that interest in an action such as this accrues as a matter of law from the date the amount due became payable under the policy. Here as in *Old Republic,* there were clauses in the policy which provided that amount became due upon proof of loss and that no action could be commenced until 60 days after proof of loss is furnished. Those provisions were held to be reasonable and to give sufficient time for payment. The record is unclear as to when proof of loss was submitted, so we are constrained to hold that interest should have begun running 60 days after the final date of hospitalization, October 11, 1969, the earliest possible date.

Because of the errors we find, the judgment will be reversed and the cause remanded for a new trial unless appellees elect within 17 days to accept a remittitur down to the amount of $2,123.24 plus 6% interest from December 10, 1969, with credit to be given in calculating the interest for amounts previously tendered by appellant, in the amount of $138.00 on August 29, 1969, and $978.75 on August 31, 1972.

BYRD, J., not participating.