RUTHERFORD *v.* CASEY.

4-3634

Opinion delivered December 10, 1934.

Claude Caldwell, I. J. Matheney and T. A. Gray, for appellant.

Dene H. Coleman and Shields M. Goodwin, for appellee.

MEHAFFY, J.   On August 21, 1933, L. M. Lawrence filed suit in the Independence Chancery Court alleging that he was in feeble health but in possession of his mental faculties; that he was and had been, for forty days before filing the suit, confined in the hospital of Dr. F. A. Gray at Batesville, Arkansas; that about August 15, 1933, while he was so confined, W. A. Rutherford, the appellant, procured plaintiff's key to his lockbox in the North Arkansas Bank at Batesville; that said Rutherford fraudulently and by trickery gained possession of the key without the knowledge or consent of Lawrence, and thereupon obtained access to the lockbox, and took therefrom the personal property belonging to said Lawrence. The property alleged to have been so taken was United States government bonds, $3,000; preferred stock in Arkansas Power & Light Company, $1,700; stock in the Southwestern Bell Telephone Company, $500; and $200 worth of stock in the First National Bank of Newport; and about $16 in gold coin, and some other small property. He further alleged that at a late hour of the night Rutherford claims to have procured from plaintiff the transfer of said personal property, but that plaintiff had no knowledge of the pretended transfer, and never intended to give said property or any part of it to said Rutherford; that, if the transfer was made, it was fraudulently and corruptly done, and that, as soon as said Lawrence was

informed about the matter, he demanded its return, but that Rutherford refused to deliver it to him; that he was threatening to sell, transfer and dispose of said property, and would do so unless the court entered forthwith a temporary injunction; that defendant was insolvent, and, if he disposed of said property, it would result in irreparable injury to the plaintiff; that the property described was practically all of the liquid assets of plaintiff, who was more than eighty years of age. There was a prayer for injunction and restraining order, and that the court cancel and set aside the transfers, and the plaintiff be decreed to be the owner. There was a temporary injunction issued and served on the same day the complaint was filed.

L. M. Lawrence died on August 28, 1933. The will of L. M. Lawrence, made July 8, 1933, appointing S. M. Casey as executor, was filed and admitted to probate, and on October 9, 1933, the suit begun by L. M. Lawrence was revived in the name of S. M. Casey as executor. On September 20 notice was served on Rutherford to appear at a hearing in the chancery court and state what property he had in his possession or under his control at the time the injunction was served on him. On October 9 Rutherford appeared and was examined with reference to the disposition of the property; he admitted that he had procured all the property, but said that Mr. Lawrence had given it to him, and that he had disposed of all of it before the injunction was issued. He named the persons to whom he had transferred the property.

An amendment to plaintiff's complaint was filed, making William A. Rutherford, Jr., Mrs. Lou Alice Brown and Mrs. Emmogene Shepard parties defendant, and asking that a warning order be issued, which was done. Defendant filed a demurrer to the complaint on the ground that the chancery court had no jurisdiction of the subject-matter, that there was a defect of parties defendant, and that the complaint did not state facts sufficient to constitute a cause of action. The court overruled the demurrer, and the defendant then filed a petition for a writ of prohibition, to prohibit the chancellor from proceeding further. A temporary writ of prohibi-

tion was issued by one of the judges, the court not being in session, and after the holidays the court considered the matter and denied the writ of prohibition, dismissed the temporary writ, and dismissed the petition therefor.

An amendment was then filed to the complaint asking that the corporations above named issue certificates of stock in favor of S. M. Casey as executor of the estate of L. M. Lawrence. Answers were filed by the telephone company and Arkansas Power & Light Company, admitting that the certificates referred to were on the books in the name of Laclede M. Lawrence, and they asked what disposition should be made of these certificates.

The evidence showed that Rutherford was a relative of Lawrence and that Rutherford was kind to him during his sickness, and visited him frequently. It also shows that Rutherford got the property described in the complaint out of the lockbox, and, according to his testimony, took it to Lawrence at the hospital about eleven o'clock in the morning; that Lawrence at that time gave him the United States bonds, and that that night, about ten or eleven o'clock, he took the certificates of stock to Lawrence, and in the presence of Mr. and Mrs. Doyle, Lawrence signed the certificates. He was not able to sign his name because of a paralytic stroke, and, while one of the parties held his hand, he made his mark on each of the certificates. This was late at night, after visiting hours at the hospital, and no one was present except Rutherford, Doyle, and his wife. Dr. Gray was not present. No reason is given why the certificates might not have been transferred at eleven o'clock in the morning, instead of waiting until eleven o'clock that night when Dr. Gray and all the visitors had left the hospital.

Several witnesses testified about Mr. Lawrence's condition and about his calling for Rutherford frequently. Lawrence, before his death, stated that he did not give the bonds and certificates to Rutherford, never intended to do so, and that they were procured fraudulently and without his consent.

The chancellor, after hearing the evidence, entered a decree finding that W. A. Rutherford procured all of the personal property mentioned in the complaint of

L. M. Lawrence by fraud and corruption, and ordered that the pretended transfers be canceled, set aside, and held for naught. The court further decreed that S. M. Casey, as executor, have and recover from W. A. Rutherford $6,000, which the court found to be the value of the stocks and bonds. The decree also required the defendant, W. A. Rutherford, Jr., to surrender bonds of the value of $300, and that Mrs. Emmogene Shepard deliver to S. M. Casey as executor, $500 in government bonds, and stock certificates referred to in the complaint, and that, upon her failure to do so, the certificates be canceled, and that the Southwestern Bell Telephone Company and the Arkansas Power & Light Company reissue said certificates in the name of S. M. Casey as executor.

The appellant prosecutes an appeal to reverse this decree. Appellant contends that the chancery court had no jurisdiction, because plaintiff did not state in his complaint that he had no adequate remedy at law. While the complaint does not state that in so many words, it does in effect. It states that Rutherford was insolvent. He not only does not deny this, but the evidence shows that within a few days, in fact before the injunction was issued, he had transferred all of the property. He says the transfers were made to pay his debts. Complainant not only says that he is insolvent, but that, unless an injunction is issued immediately, the appellant will transfer the property, resulting in irreparable injury to the plaintiff. The evidence is ample to show that these allegations of the complaint are true. Even if appellee could have maintained a suit in replevin for the property, this remedy, as shown by the evidence, would have been inadequate. Under the allegations of the complaint the chancery court had jurisdiction.

It is next contended by the appellant that this suit cannot be maintained because it is not prosecuted by a creditor. The suit was begun by Lawrence, the owner of the property, to set aside what he alleged was a fraudulent transfer. He alleged not only that the certificates and bonds were procured by fraud and corruption, but that the transfers were also procured by fraud. A few days after filing this suit, Lawrence died. It would, of

course, not be contended that Lawrence himself, if living, could not maintain the suit.

Section 1050 of Crawford & Moses' Digest provides: "In all cases where suits may be instituted, and either plaintiff or defendant may die pending the same, it shall be lawful for the court before which such suit or suits may be pending, on motion of any party interested, to appoint a special administrator, in whose name the cause shall be revived, and said suit or suits shall progress in all respects in his name with like effect as if the plaintiff or defendant (as the case may be) had remained in full life."

Section 1061 provides: "Upon the death of the plaintiff in an action, it may be revived in the name of his representatives to whom his right has passed. Where his right has passed to his personal representative, the revivor shall be in his name; where it has passed to his heirs or to his devisees, who could support the action if brought anew, the revivor may be in their names."

It is contended by the appellant that the court erred in permitting the executor to introduce the deposition of L. M. Lawrence, taken before his death, and appellant alleges this testimony was taken without any notice to him, and before he employed counsel. In the first place, the appellant was present when it was taken, and, in the next place, his own evidence consists largely of statements that he alleges Lawrence made before his death.

The chancery court, however, will consider the competent evidence only, and this court will consider only the competent evidence, even if evidence that was incompetent was introduced.

Whether the keys to the lockbox were fraudulently procured, the certificates and bonds fraudulently procured, and the transfers fraudulently made, were questions of fact for the chancellor, and, unless the finding of the chancellor is against the preponderance of the evidence, his finding will not be disturbed. On these questions, the finding of the chancellor must be affirmed.

The appellee prosecutes a cross-appeal. The court did not require appellant to deliver to the executor the

stocks and bonds fraudulently obtained. In this we think the court erred. Rutherford testified that he sent some of the bonds and certificates to Mrs. Emmogene Shepard at the Chase Hotel in St. Louis; that he mailed them in North Little Rock; sent them by special delivery. His evidence is not only not corroborated on this question, but evidence was taken by appellee showing that Mrs. Shepard had not been at the Chase Hotel, and that no mail came there for her. The post office department witnesses testified that there was no record of the letter Rutherford claims he mailed. The appellant did not produce Mrs. Shepard as a witness. It was in his power to make proof by her of the delivery of the securities to her, if they were in fact delivered to her.

"The highest proof of which any fact is susceptible is that which presents itself to the senses of the court or jury. Neglect to produce such evidence by a party who has it in his power justified the inference that it would operate to the prejudice of his contention." 2 Moore on Facts, p. 1353; *Lynch* v. *Stephens,* 179 Ark. 118, 14 S. W. (2d) 257; *Ramey* v. *Fletcher,* 176 Ark. 196, 2 S. W. (2d) 84; *Smith* v. *Wheat,* 183 Ark. 169, 355 S. W. (2d) 335; *Sparkman Hardwood Lbr. Co.* v. *Bush,* 189 Ark. 391, 72 S. W. (2d) 527.

"Failure of a party to produce evidence which would conclusively determine the fact in dispute may give rise to a conclusive presumption of law that the fact is as claimed by the adverse party." *Beehil* v. *Fraas,* 114 N. Y. S. 17.

The failure to produce evidence within the party's control raises the presumption that, if produced, it would operate against him, and every intendment will be in favor of the opposite party. *Kirby* v. *Tallmadge,* 160 U. S. 379, 16 S. Ct. 349; *Johnson* v. *Levy,* 109 La. 1036, 34 So. 68; *Chicago & W. I. Ry. Co.* v. *Newell,* 113 Ill. App. 263; *Choctaw & Memphis Ry. Co.* v. *Newton,* 140 Fed. 225.

No reason is given by appellant for not producing Mrs. Shepard. After the appellant had testified as to when and where and the manner in which he mailed the securities to her, and the evidence showing that there is no record of such transaction, and the evidence also

showing that Mrs. Shepard was not at the Chase Hotel, his failure to produce Mrs. Shepard raises the presumption that, if produced, she would testify against him. This, together with the fact that the evidence of a party to a suit is not to be considered as undisputed, justifies us in holding that Rutherford still has the securities that he claims he sent to Mrs. Shepard.

As to the certificates and bonds sent to his children in Dallas, Texas, the situation is somewhat different. However, while W. A. Rutherford, Jr., testifies that his father owed him a debt, the evidence also shows that a very short time after the securities were sent to him in Dallas, he sent his father $1,000. We think the evidence is ample to justify the court in holding that the appellant still has control of the certificates and bonds he sent to his children.

The decree on direct appeal is affirmed, and on cross-appeal is reversed and remanded.