Tammy Chambers STONE *v.* Keith STEED

CA 95-977                                          923 S.W.2d 282

Court of Appeals of Arkansas
Division III
Opinion delivered May 29, 1996

*Dowd, Harrelson, Moore & Giles*, by: *Gene Harrelson*, for appellant.

*Wilson, Walker & Short*, by: *Charles M. Walker*, for appellee.

JOHN B. ROBBINS, Judge. This is an appeal from a decision of the Hempstead County Chancery Court, which awarded appellee Keith Steed custody of the parties' minor child, Kelsey. Appellant Tammy Chambers Stone contends on appeal that the chancellor erred in allowing into evidence testimony concerning misdemeanor convictions of "non-party" individuals to show their bad character or reputation. Appellant also contends that the chancellor's finding that a material change in circumstances occurred which justified a change of custody was against the preponderance of the evidence. We find no errors and affirm.

On March 4, 1991, a paternity complaint was filed by the Arkansas Department of Human Services Child Support Enforcement Unit which alleged that appellee Keith Steed was Kelsey's

father. In February 1992, a judgment of paternity was entered finding that the appellee was the father of Kelsey and awarded him liberal visitation. The evidence showed that appellee exercised his visitation on a regular basis and paid child support.

On May 1, 1995, appellee filed a petition to change custody in which he alleged a change in circumstances which necessitated that he be awarded custody. The petition included an affidavit from Cindy White, appellant's sister, in which it was alleged that Kelsey's health and welfare was being endangered because of the activities of appellant and Randal Stone, the man with whom she was living. Appellant married Stone twelve days prior to the hearing. On June 12, 1995, the chancellor found a material change in circumstances had occurred and that it was in Kelsey's best interest that custody be awarded to the appellee, her biological father. From that decision comes this appeal.

Appellant first contends on appeal that the chancellor erred in allowing testimony concerning misdemeanor convictions of "non-party" individuals to show their bad character or reputation. At the hearing before the trial court, the appellee introduced testimony from the Hempstead County Municipal Court Clerk, Jo Ann Lively, that certain individuals who had been seen "hanging out" at the appellant's house had prior misdemeanor convictions. Appellant objected and the court ruled as follows:

> The reputation for being a law-abiding character perhaps. The Court having weighed the probative value on the issue of whether unwholesome or improper influences are present or have been present in the home finds that the probative value of these misdemeanors or uncharged conduct outweighs any prejudice to the individuals who are admittedly not on trial or being charged with criminal conduct. The objection is overruled.

After the chancellor overruled appellant's objection, Ms. Lively testified about two misdemeanor convictions that appellant's new husband had received: possession of a controlled substance, and harassment. Ms. Lively also testified that another person, who frequented appellant's residence, had been convicted of assault in the second degree. Appellant stipulated that Charles Bomar, who also had been seen at her residence, had been found guilty of two counts of possession of a controlled substance (marijuana) with intent to

deliver and had served time in the penitentiary.

Proof presented on behalf of the appellee included testimony that certain individuals had been seen in the appellant's home smoking marijuana while the child was present. Appellee presented this testimony to show that certain individuals who frequented the appellant's home had bad character and reputations, and that it was not in the child's best interest to be around such individuals.

■ As the trial court correctly ruled, the misdemeanor convictions were neither used for impeachment purposes nor against a person on trial for criminal conduct. The persons found guilty of the misdemeanors were not on trial and were not even called as witnesses. Consequently, the prejudice, against which the rules of evidence seek to protect, was not present. The exceptions to the general rule of character evidence, set out in Ark. R. Evid. 404(1) and (2), have been held inapplicable to civil cases. *Brown* v. *Conway*, 300 Ark. 567, 781 S.W.2d 12 (1989). The court in *Brown* went on to state that the use "of the words 'accused' and 'prosecution' means that these two exceptions should be applied only in criminal cases." In *James* v. *James*, 29 Ark. App. 226, 780 S.W.2d 346 (1989), we found that evidence concerning the moral character of a parent is relevant to the best interest of the child and the issue of parental custody. The evidence of misdemeanor convictions reflected on appellant's morality in allowing persons of questionable reputation and character to be around her child. Such information was relevant in deciding the best interest of the child and who should have custody. The chancellor did not abuse his discretion in allowing the testimony.

The appellant secondly contends that the chancellor's finding that a material change in circumstances had occurred which justified a change in custody was against a preponderance of the evidence. Appellant argues that she could spend more time with the child because both the appellee and his present wife work. She also alleges that the accusations of her drug use and the bad reputations of individuals "hanging around" her home were unfounded in the evidence. She contends that the evidence was insufficient to show a change in circumstances which would justify a change in custody.

■■ We have stated many times that a material change in circumstances must be shown before a court can modify an order

regarding child custody, and the party seeking modification has the burden of showing such a change. *Jones v. Jones,* 51 Ark. App. 24, 907 S.W.2d 745 (1995). As in all custody cases, the primary consideration is the welfare and best interest of the child; all other considerations are secondary. *Hoing v. Hoing,* 28 Ark. App. 340, 775 S.W.2d 81 (1989). Custody awards are not made or changed to gratify the desires of either parent, or to reward or punish either of them. *Fitzpatrick v. Fitzpatrick,* 29 Ark. App. 38, 776 S.W.2d 836 (1989). Although we review chancery cases de novo, the chancellor's findings will not be disturbed unless clearly against the preponderance of the evidence. *Id.* Since the question of the preponderance of the evidence turns largely on the credibility of witnesses, the appellate court defers to the superior position of the chancellor, especially so in those cases involving custody. *Hoing v. Hoing, supra.*

Appellee Keith Steed testified that he has exercised his visitation with Kelsey on a regular basis. Appellee is married and has one child with his current wife, Terry, who also has three children from a previous marriage. Appellee and Terry testified that the child would be well cared for in their home and that they had plenty of space for her.

Appellee testified that he became concerned for the child's welfare when appellant began living with Randal Stone, her current husband. Appellee testified, without objection, that when he returned the child after visitation he observed individuals at appellant's home who had been arrested for marijuana use and other strangers whose identity was unknown to him. Appellee testified that, just prior to filing the petition in question, he was returning the child and observed appellant to be "wasted." He testified that appellant was covered in mud, had a scar between her eyes, never spoke to the child, and never even raised her head to acknowledge their presence. Appellee testified that he believed that appellant was "wasted" and "high on something." Appellee also testified, without objection, that appellant's husband, Randal Stone, had pulled a gun on the appellant and put it to her head while the child was present.

Appellant's husband, Randal Stone, testified that he had had many problems with appellant's mother. He testified that he had been convicted of several crimes in which the appellant's mother was the victim, including assault and criminal mischief. Mr. Stone admitted that he had previously been convicted of possession of a controlled substance and had "smoked a little pot" in the past. Mr.

Stone also admitted that several individuals, whose previous convictions were testified to, had been to his home where the child in question was residing. Mr. Stone denied ever having pulled a gun or knife on the appellant.

Cindy White, appellant's sister, testified on behalf of appellee. She testified that Mr. Stone had beaten the appellant and she was concerned for the child's welfare. Ms. White testified that she had personally observed Mr. Stone use marijuana several times at his home when both the appellant and the child were present. She went on to testify that she observed several people at the appellant's home who had reputations for being "dopeheads." The municipal court clerk testified that several of the people Ms. White had seen in appellant's home had previous misdemeanor convictions.

The chancellor made his ruling in part as follows:

> Clearly, if the testimony presented by Mr. Steed's side of the case is believable there are material changes and material concerns that require, or certainly suggest, custody should change, and I do find that those witnesses, including but not exclusively Ms. White, were very believable, and I do believe them. Really, on a case like this, largely it turns on credibility or believability. I do believe that there were circumstances, including marijuana use, in at least close enough proximity to the child to put her at risk of physical harm while people were intoxicated, and certainly, the example of what society really finds to be criminal behavior. It's wrong. There are other concerns, and this record is complete. Custody will transfer to Mr. Steed. I believe certainly full, and for the child's benefit liberal visitation should be afforded, but with some structures, and those would be that none of the named felons, or the named felon or those identified as having broken the law in front of, in the household should be allowed to be around the child during periods of visitation, with the exception of Mr. Stone.

Based on the chancellor's assessment of credibility and the evidence before him, we believe the chancellor correctly found that a material change in circumstances had occurred which warranted a change in custody. We do not believe the chancellor's decision that it was in the child's best interest for appellee to have custody was clearly against a preponderance of the evidence.

Affirmed.

ROGERS and NEAL, JJ., agree.