Mary Ann RECTOR *v.* Joseph Michael RECTOR

CA 96–634                                        947 S.W.2d 389

Court of Appeals of Arkansas
Divisions I & IV
Opinion delivered June 25, 1997

*Pawlik & Associates*, by: *Ella Maxwell Long*, for appellant.

*Davis & Watson, P.A.*, by: *Jeff H. Watson*, for appellee.

SAM BIRD, Judge. Mary Rector brings this appeal from the Chancery Court of Benton County, which granted permanent custody of her son, Kevin, to Kevin's father, Joseph Michael "Mike" Rector. On November 16, 1995, Mr. Rector, appellee, filed a complaint in chancery court, alleging he was entitled to a divorce and requesting custody of Kevin. Ms. Rector answered and also petitioned the court for full custody of Kevin.

A temporary hearing was held November 27 to determine who should be awarded temporary custody of Kevin while the divorce was pending. The chancellor noted that, as with many cases, the parents in this case were not perfect. The chancellor was disturbed that Ms. Rector had allegedly threatened to burn down the house, that Ms. Rector was not able to control her anger in front of Kevin, and that she did not communicate well with Kevin or her other children. In addition, the court noted that Ms. Rector has taken a lot of anti-depressants for her inability to control her stress.

The chancellor was concerned about Mr. Rector's admitted use of marijuana, that he had taken Kevin out of school during the time Kevin was in the middle of a chess tournament, that Mr. Rector does not seem to think that education is important, that

Mr. Rector did not yet have a stable location he could call home, and that Mr. Rector's work takes him out of town often.

Ms. Rector was awarded temporary custody because the chancellor found that she could meet the needs of the child and because her work schedule would allow Kevin to have a more stable environment.

A hearing was held on February 5, 1996, to determine whether a divorce should be granted, and if so, who should be awarded full custody of Kevin. Again, Mr. Rector admitted to using illegal drugs and Ms. Rector admitted to using a large amount of prescription drugs. Joseph Michael Rector, the parties' eldest son, testified that Ms. Rector had a number of mood swings. Both parents admitted to disciplining Kevin with a belt, and testimony was presented that Ms. Rector also used a wire fly swatter. Kevin testified that he wanted to live with his father because his dad "takes me out camping and everything, and Mom just watches TV and tells me to go to school and stuff."

Nicki McDonald, Ms. Rector's adult daughter from another marriage, also testified. Ms. McDonald stated that Mr. Rector had sexually abused her when she was a child. Appellee objected, stating that the evidence was irrelevant. After questioning Ms. McDonald, the court sustained the objection, stating that a complete investigation into these allegations had not been made and that a link between the incident that happened ten years ago and what was being decided in the hearing was missing.

The chancellor granted Mr. Rector a divorce and permanent custody of Kevin, subject to visitation rights of Ms. Rector. In his oral findings, the chancellor stated that he was concerned about the use and storage of illegal drugs and prescription drugs. However, the chancellor felt that an illegal drug problem could be handled by ordering Mr. Rector to take drug tests, ordering examinations of the home and ordering that the child be removed from an environment where illegal drugs are used. However, these options were not available in monitoring Ms. Rector's use of prescription drugs. He found that Ms. Rector was taking a large amount of anxiety drugs because of her mood swings, and found that Kevin needed a stable environment and needed to be able to

know what to expect from each parent. The chancellor also noted that Mr. Rector tended to spend more time in activities with Kevin.

■ This court reviews chancery decisions de novo and reverses only if it finds that the chancellor's findings are clearly against the preponderance of the evidence. *Fitzpatrick v. Fitzpatrick*, 29 Ark. App. 38, 776 S.W.2d 836 (1989). In a custody hearing, the court considers what is in the best interest of the child. Ark. Code Ann. § 9-13-101 (Repl. 1993). Factors a court may consider in determining what is in the best interest of the child include the psychological relationship between the parents and the child, the need for stability and continuity in the child's relationship with parents and siblings, the past conduct of the parents toward the child, and the reasonable preference of a child. *Anderson v. Anderson*, 43 Ark. App. 194, 863 S.W.2d 325 (1993). In child custody cases, the chancellor has a heavy burden of evaluating the witnesses, their testimony, and determining what is in the child's best interest. *Fitzpatrick*, 29 Ark. App. at 40, 776 S.W.2d at 837. In *Fitzpatrick*, this court held, "We have often stated that we know of no cases in which the superior position, ability, and opportunity of the chancellor to observe the parties carry as great a weight as those involving child custody." *Id.* (citing *Calhoun v. Calhoun*, 3 Ark. App. 270, 625 S.W.2d 545 (1981)).

Appellant argues on appeal that the chancellor abused his discretion in determining that it was in the best interest of the minor child to be placed in the permanent custody of appellee because the chancellor's decision was clearly against the preponderance of the evidence. For this claim, the appellant relies on three arguments. We affirm.

First, appellant argues the court erred when it ruled that the testimony by Nicki McDonald that Mr. Rector had sexually abused her was irrelevant. She argues that the testimony is a reflection on Mr. Rector's morality and that morality must be considered in determining what is in the best interest of the child. We agree that morality is a factor to be considered in determining a child-custody case; however, we also agree with the chancellor that neither a proper link had been made to connect the allegation

to the case at hand nor had a proper investigation been made into the allegation.

Nicki McDonald testified that Mr. Rector sexually abused her when she was in the ninth or tenth grade. She testified that he would come into her bedroom and "he touched me and that was it." However, she never talked to anyone about the incident. She stated that she confronted Mr. Rector and he did not touch her again. Appellee objected to the testimony based on relevance. The court then questioned Ms. McDonald and ruled,

> I think this is an issue that needs to be resolved. It's not totally collateral to this, but I think there needs to be some tie-in to something that happened over ten years ago and what is happening today. If he has exhibited these propensities of abuse toward other children or something, the male children, I need to know about that. We are dealing with a male child here. I am not putting down the allegations Mrs. McDonald is making here today, but I just don't think that this is the platform for doing it.

█ █ The court obviously gave little weight to the testimony of Ms. McDonald about her sexual-abuse allegations against Mr. Rector because no investigation had been made into the allegation, because the alleged incidents had gone unreported to anyone by Ms. McDonald for ten years, and because the custody hearing concerned a twelve-year-old boy and not a high-school girl. No evidence was presented that Mr. Rector had ever sexually abused his son and he steadfastly denied that he had ever touched Ms. McDonald inappropriately. Where testimony conflicts, the issue of credibility is a matter in which this court defers to the chancellor. *Fitzpatrick, supra.*

█ Ark. R. Evid. 401 defines relevant evidence as evidence that has a tendency to make the existence of any fact more probable or less probable than it would be without the evidence. This court will not reverse a chancellor's ruling on relevancy unless it finds an abuse of the trial court's discretion. *James v. James,* 29 Ark. App. 226, 780 S.W.2d 346 (1989). In child-custody cases, the chancellor's personal observation of the mother and father and their respective personalities is vital and of inestimable value. *Fitzpatrick, supra.*

For her second argument, appellant contends that the chancellor's findings that the appellant's use of prescription drugs was abusive is arbitrary and groundless. The appellant cites no authority for this argument but argues that this finding was not supported by substantial evidence.

The chancellor did not specifically find that appellant was abusing drugs, but he did express that he was "concerned about the number of prescription drugs that are passing through the hands of the defendant." Evidence was introduced that showed appellant was getting prescriptions filled about every month. She testified that she was taking, or has taken in about a year, Valium, which she characterized as an antianxiety drug taken to help her sleep; Phentermine and Pondimine to help her lose weight; Darvocet, for chronic headaches; Polyhistine-D for sinus; Cephalexin, which is an antibiotic; and Paxil, as an antidepressant. She also testified that she had taken Fiorinal during the past year for pneumonia. Further, she stated that although she gets refills of Valium of about 100 every other month, she does not take all of them. Also, she testified that she receives refills of Darvocet in quantities of about forty every other month but does not take all of them either.

The chancellor found that she was taking some of these drugs for mood swings, and the chancellor held that Kevin needed stability. The chancellor stated, "I believe the child needs to know what to expect from his parents and I believe it needs to be stable and needs to be consistent in that response." Based on the number of drugs appellant takes or has taken recently and the number or refills she receives, the chancellor did not abuse his discretion in considering appellant's prescription drug use as a factor in determining what was in the best interest for Kevin.

For her third argument, the appellant contends that the chancellor should not have considered drug-test results of the appellee because the tests were not admitted into evidence. The appellant states that the chancellor further erred by discounting appellee's illegal drug use.

During the hearing, Mr. Rector testified that he had submitted to drug tests monthly since the temporary hearing so that he

"could convince the judge that I am serious when I say I am not going to be using it." However, when appellee's counsel sought to have the documents containing the results of the drug tests marked as exhibits, appellant's counsel objected to their introduction on grounds that they were "inadmissible." The court did not rule on the objection but the documents containing the results of the drug tests were not introduced into evidence. The judge later commented that he was impressed by the drug tests.

The dissenting opinion suggests that the drug-test results were not introduced because of failure on the part of appellee to produce them, and that such failure gives rise to a presumption that the evidence, if produced, would be unfavorable to appellant. Exactly the opposite is true. Appellee had the test results present in court and was preparing to have them marked as exhibits as a prerequisite to their introduction when appellant objected because the person who conducted the tests was not present to authenticate them. Appellant obviously knew what the test results would show and did not want the court to consider them. It would be unreasonable to infer that the drug-test results were unfavorable to appellee where it was appellee who revealed that he had taken the tests, where he took the tests to try to persuade the judge that he was no longer using marijuana, and where appellee was attempting to offer the test results into evidence until they were objected to by the appellant.

The judge did not comment that he was impressed with the *results* of the drug tests. Instead, he said that he was impressed with the tests, obviously meaning that he was impressed that appellee had gone to the trouble and expense of having the tests performed. It was not impermissible for the court to consider such evidence. Clearly it bears upon the credibility of appellee's testimony that he had stopped using marijuana.

The court did not rely on the drug tests in determining custody and what would be in the best interest of the child. In the court's order, the chancellor stated that he might take Mr. Rector "up on these drug tests. If, in fact, it comes to . . . my attention that there is a — I guess if I'm convinced that there may be a

violation of this trust that I have in you on the consumption of drugs, I reserve the right to order you to take a drug test."

Further, the trial court did not discount appellee's illegal drug usage. To the contrary, the judge found that he could monitor and had options to deal with any allegations of illegal drug use by Mr. Rector, but it would be more difficult to monitor or take action on the allegation of abuse of prescription drugs. The court held,

> I certainly do not encourage the use of illegal drugs. I don't encourage the abuse of prescription drugs. I am concerned about the number of prescription drugs that are passing through the hands of the Defendant. I am concerned about the security of those drugs just as much as I am concerned about the security of illegal drugs. There is a way the illegal drugs can be modified [sic] by this Court, because I can order drug tests, I can order protective services, I can order examination of the home, and with illegal drugs, I can remove the child from that environment. Where it is [an] abuse of legal drugs, I don't have those options.

■ We do not find that the chancellor's decision to place Kevin in the custody of his father was clearly against the preponderance of the evidence, and we affirm.

Affirmed.

JENNINGS, STROUD, NEAL, and CRABTREE, JJ., agree.

ROGERS, J., dissents.

JUDITH ROGERS, Judge, dissenting. This is an appeal from a decree awarding custody of the parties' ten-year-old son to his father. I register this dissent mainly because the majority has committed a most grievous error in judgment by affirming the chancellor's ruling that evidence that the father sexually abused his stepdaughter is not relevant to a determination of whether he is a fit and proper person to have custody of the child.

The testimony deemed irrelevant by the chancellor and this court is that of Nicki McDonald. Ms. McDonald is appellant's twenty-six-year-old daughter from a former marriage, who had lived in the household with appellee since she was a small child, as the parties married when she was a year old. She said that, when

she was in the ninth or tenth grade, appellee came into her bedroom several times a week and touched her inappropriately. The abuse stopped after a confrontation, and she said that appellee admonished her not to tell anyone and convinced her that no one would believe her. Therefore, she kept the abuse a secret.

"Relevant evidence" means evidence having *any* tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ark. R. Evid. 401. A fact that is of consequence in this case was whether appellee was a fit and proper person to have custody of the child. We have recognized that evidence bearing on a parent's moral character is relevant in deciding the issue of custody. *Stone v. Steed*, 54 Ark. App. 11, 923 S.W.2d 282 (1996); *James v. James*, 29 Ark. App. 226, 780 S.W.2d 346 (1989). It requires no stretch of the imagination to realize that evidence of sexual abuse of a child speaks volumes about that person's moral character.

In *James v. James*, 29 Ark. App. 226, 780 S.W.2d 346 (1989), we reversed a chancellor's ruling excluding evidence on grounds of relevancy that a prospective custodial parent had fraudulently embezzled funds from his deceased father's estate. We held that this behavior was indicative of the parent's moral character and was thus relevant to the issue of parental custody and the issue of the best interest of the child.

More recently, in *Stone v. Steed*, 54 Ark. App. 11, 923 S.W.2d 282 (1996), we affirmed a chancellor's ruling permitting evidence of crimes committed by third persons who were brought into the presence of the child by a prospective custodial parent. The offenses included possession of a controlled substance, harassment, and possession of a controlled substance with intent to deliver. We harkened back to our decision in *James v. James*, *supra*, and held that, since evidence of a parent's moral character is relevant in a custody proceeding, the evidence in question was relevant as a reflection on the parent's "morality in allowing persons of questionable reputation and character to be around the child."

I submit that the behavior evidenced in this case is far more serious than that of fraud or embezzlement. And, if evidence that

a parent's acquaintances have committed crimes is considered a poor reflection on that parent's moral character, then there is no sound reason to conclude that the evidence in this case is irrelevant. Aside from the moral implications of the evidence discussed in *James v. James* and *Stone v. Steed*, evidence of a parent's conduct and activities is routinely admitted in custody cases as a means for chancellors to acquaint themselves with the parties in order to decide the placement of custody. Church activities, or the lack thereof, criminal records, drinking habits, drug usage, adulterous affairs, the use of foul language, etc., are all considered relevant topics in a custody case, as having a tendency to show the kind of person a parent is. No reasonable person, even one unschooled in the law, would argue that evidence of sexual abuse is not relevant. Nevertheless, the majority stubbornly refuses to count this evidence among that which is generally considered relevant in determining the best interest of the child.

To affirm, the majority accepts the chancellor's reasoning that the evidence was not relevant because the abuse involved a young girl, whereas the child in question is a young boy. That distinction misses the point entirely. The evidence was not offered to show that the child was necessarily in danger of being abused. It was offered as evidence bearing on the issue of appellee's moral character and his fitness to have custody of the child. It cannot be said that this evidence was not probative of appellee's basic moral fiber and character. It would be ludicrous to conclude otherwise.

The majority further holds that the evidence was not relevant because there had been no "proper investigation" of the allegation. I suppose this means that evidence of this kind is not considered relevant unless it has been reported to the proper authorities and investigated by them. In other words, acts that have remained clothed in secrecy are not relevant. To plainly state the majority's holding is but to expose the fallacy of its reasoning.

The issue here is one of simple relevancy. The chancellor unequivocally ruled that he did not consider this evidence relevant to any issue before him; he thus did more than attach little weight to the evidence as the majority obliquely suggests. Significantly,

the chancellor did not find that the testimony was not worthy of belief. Yet to affirm this ruling, the majority has erected artificial barriers for the admission of this evidence. Such a result represents a perversion of the definition of relevant evidence and a blatant disregard of our case law holding that evidence of a parent's moral character is relevant in a custody case. This decision is thus as offensive as it is wrong.

Issues that touch upon the welfare of children should merit particular consideration on appellate review. As I indicated in my dissenting opinion in *Jones v. Jones*, 51 Ark. App. 24, 907 S.W.2d 745 (1995), rev'd on review, 326 Ark. 481, 931 S.W.2d 767 (1996), we who sit on this court should not hesitate to reverse in the face of manifest error. When a chancellor refuses to consider evidence that is relevant to the vital issue of a parent's character, his values, and his sense of morality, it is our responsibility to take corrective action to disabuse the chancellor of his mistake in judgment. The chancellor in this case clearly abused his discretion in failing to consider this evidence as relevant. His ruling should not have the approbation of this court.

While I would reverse and remand on this issue alone without discussing the other arguments on appeal, this court's affirmance compels me to comment on the remaining issues raised. I also find fault with the chancellor's comparison of appellant's use of prescription medication to appellee's use of an illegal substance. Persons who take medications prescribed by their doctors do so for reasons of health, while persons who use illegal, controlled substances do so for recreational purposes. Obviously, there is a vast difference between the two.

And in this case, the medications prescribed for appellant were for the treatment of severe and frequent migraine headaches, which appellee did not dispute, and anxiety associated with her monthly menstrual cycle, as well as stress brought about by the deterioration of the parties' relationship. These medications were prescribed under the direction and control of a physician in quantities deemed necessary by him for the treatment of those conditions. And, the chancellor did not find that she abused any of these medications. Appellee, on the other hand, admitted that he

had smoked marijuana for twenty years. Introduced into evidence was a book of appellee's called *The Marijuana Growers Guide*, which suggests that appellee did more than smoke this illegal substance. There was evidence that appellee's use of this substance influenced the parties' elder son, who also smoked marijuana and who had even stolen appellee's marijuana from the shed where appellee kept it hidden. The young boy in question also testified that he had been around his father "every now and then when he acted kind of funny, acted drunk." Therefore, I question the chancellor's ruling holding appellant blameworthy for the use of prescribed medications, while downplaying appellee's daily use of marijuana. The court reasoned that he could not control appellant's behavior, but that he could control appellee's usage of drugs. In the end, however, the chancellor did nothing to check appellee's use of marijuana, since drug testing was not made part of the decree. The decree provided only that the court reserved the right to order drug testing in the future.

I also cannot disagree with appellant's argument that the chancellor considered evidence that was not introduced. It is clear that the chancellor was impressed with appellee's testimony that he had been tested for drugs, as if the results were negative. However, the results of those tests were not admitted into evidence. It goes without saying that a court is not to consider evidence outside of the record. *See Sanders v. Putman*, 315 Ark. 251, 866 S.W.2d 827 (1993). Moreover, if the results were favorable to appellee, I wonder why no effort at all was made to lay a foundation for their admission? The failure to produce evidence within the party's control raises the presumption that, if produced, it would operate against him, and every intendment will be in favor of the opposite party. *Arkansas Hwy. Comm'n. v. Phillips*, 252 Ark. 206, 478 S.W.2d 27 (1972); *Rutherford v. Casey*, 190 Ark. 79, 77 S.W.2d 58 (1934).

Although we lend great deference to a chancellor's judgment in custody cases, and for good reason, that does not mean that we must affirm when the record is fraught with errors so fundamental as to constitute an abuse of discretion.

I respectfully dissent.