972 So.2d 656 (2007)
C.A.M.F., Appellant
v.
J.B.M., Appellee.
No. 2005-CA-02227-COA.
Court of Appeals of Mississippi.
May 1, 2007.
Rehearing Denied September 25, 2007.
*658 William Neal Small, Ronald Louis Taylor, attorneys for appellant.
Steven Glen Roberts, attorney for appellee.
Before LEE, P.J., BARNES and ISHEE, JJ.
BARNES, J., for the Court.
¶ 1. This is an appeal brought by C.A.M.F. (the Mother) from the order of the Chancery Court of DeSoto County modifying the custody of her then ten-year-old son (the Son). By order, the physical and legal custody was changed to J.B.M. (the Father).
¶ 2. The Mother on appeal contends that the chancellor misapplied the controlling legal precedent in custody modification, failed to address the applicable law relating to siblings and custody, committed manifest error in several evidentiary matters by the wrongful inclusion or exclusion of evidence, and adopted findings and conclusions not supported by the record.
¶ 3. We find no reversible error and affirm the chancellor's judgment.

*659 FACTS
¶ 4. The Mother and Father were divorced on April 14, 1999, in Shelby County, Tennessee. Their only child, a son, was born on March 5, 1995. The Mother remarried on May 28, 1999, and subsequently had another son with her new husband.
¶ 5. On September 26, 2003, the Father filed a petition in DeSoto County Chancery Court to enroll and modify the final divorce decree from Shelby County, Tennessee, which granted the Mother a divorce on the ground of cruel and inhuman treatment and awarded her custody of the minor child. The Shelby County Chancery Court declined jurisdiction, and the case continued in DeSoto County, which is now the residence of both parties.
¶ 6. The Father testified that he instituted the proceeding to modify custody after he found out some matters of concern about the Mother's new husband (M.A.F.)("Mike"[1]). First, the Father learned of allegations that Mike had taken nude photographs of the Son, not showing the child's face, when he was approximately six years old. According to the Father's testimony, a sheriff's department detective had asked the Father about the photographs. There was also testimony that the Son had been upset by the photographs.
¶ 7. Next, the Father learned that in Mike's prior divorce proceeding in Rankin County there was testimony that Mike, then using his middle name, was found to have repeatedly exposed himself to neighbors, relatives, and babysitters. The Father ultimately obtained certified copies of the divorce proceedings and provided them to his attorney.
¶ 8. The Father's mother (the Paternal Grandmother) testified that four years earlier she had gone to the Mother and her new husband's house to pick up the Son for the day and when she drove up Mike was standing at the door completely naked and in full view. She testified that Mike knew that she was coming. She also testified that on another occasion she brought the Son home from an outing and saw Mike standing in the pool without any clothes on, while the Mother and the other child were nearby fully clothed.
¶ 9. The Paternal Grandmother also testified that, on an occasion when she came to the custodial residence to pick the Son up for a wedding, the Son emerged from the home visibly distraught and told her that Mike had been choking the Mother and would not stop. The grandmother indicated that the Son was crying and seemed frightened when he made the statement. The Mother later told the Paternal Grandmother that she and Mike had been playing around and that the Son had the wrong impression of what had happened.
¶ 10. R.K.F. ("Rita") testified that she was married to Mike for two months in 1995. She testified that he had a habit of walking around the house in the nude and standing nude in front of an open window. She stated that nudity was an "issue" with her and with his daughter from a relationship prior to his marriage to Rita.
¶ 11. S.M.D. ("Susan") testified that she and Mike had a daughter in 1992 and that he was using his middle name then. Susan testified that when her daughter was two months old, she had an argument with Mike during which he shoved and pushed her, which lead to her leaving him. She also testified that he exposed himself to several people during their relationship, including two babysitters. Susan testified that she had been in litigation in Rankin County concerning Mike's inappropriate *660 behavior around their daughter. Susan testified that Mike had not seen his daughter for six years and had never sent any child support to her.
¶ 12. Melissa Gardner, the guardian ad litem for Mike and Susan's daughter, testified that there was never a final disposition of the custody in that case because Mike disappeared, failing to respond to any telephone calls or letters about the case.
¶ 13. Mike testified and acknowledged that he used a different name in Rankin County than he did in DeSoto County. He also admitted that he had not paid child support for his daughter. He admitted that on different occasions that babysitters had seen him naked. He also admitted to having been accused of inappropriate behavior toward female employees at River Oaks Hospital, where he had been employed. He denied taking the nude photographs of the Son. The Mother testified that she took the photographs.
¶ 14. In their arguments to the Court, both parties have overstated their relative positions, and the Court has chosen not to discuss the many inaccurate statements made by the parties in their briefs to the Court.

STANDARD OF REVIEW
¶ 15. The standard of review in child custody cases is quite limited, and in order to reverse a chancellor he must be manifestly wrong, clearly erroneous or have applied an erroneous legal standard. Hensarling v. Hensarling, 824 So.2d 583, 587(¶ 7) (Miss.2002); Williams v. Williams, 656 So.2d 325, 330 (Miss.1995); Chamblee v. Chamblee, 637 So.2d 850, 860 (Miss.1994). The Court reviews de novo whether the trial court applied the proper legal standard in deciding a custody modification. Morgan v. West, 812 So.2d 987, 990(¶ 8) (Miss.2002).

DISCUSSION
I. WHETHER THE CHANCELLOR MISAPPLIED THE CONTROLLING LEGAL PRECEDENT IN CUSTODY MODIFICATION
¶ 16. The appellant argues that the chancellor committed manifest error when he misapplied Mabus v. Mabus, 847 So.2d 815 (Miss.2003), Riley v. Doerner, 677 So.2d 740 (Miss.1996), and Albright v. Albright, 437 So.2d 1003 (Miss.1983). It is the appellant's specific contention that the chancellor did not follow the procedure in Mabus, did not find any "adverse effect" on the child as a result of the alleged "change in circumstance," did not find either a dangerous or illegal environment in the custodial home, and proceeded to consider the factors in Albright and change custody based on speculation as to future harm.
¶ 17. In this case the chancellor did in fact discuss and apply the cases which the Mother contends were misapplied. In Mabus, the Court stated that the noncustodial parent must prove "(1) that a substantial change in circumstances has transpired since issuance of the custody decree; (2) that this change adversely affects the child's welfare; and (3) that the child's best interests mandate a change in custody." Mabus, 847 So.2d at 818(¶ 8) (quoting Bredemeier v. Jackson, 689 So.2d 770, 775 (Miss.1997)).
¶ 18. In reaching his conclusion in the present case, the chancellor also quoted extensively from Riley, 677 So.2d at 744-45, including the principle that the polestar consideration in any child custody matter is the best interest and welfare of the child, also found in Albright, 437 So.2d at 1005, and Mabus, 847 So.2d at 818(¶ 8) (citing Albright).
*661 ¶ 19. Based on this case law, the chancellor in the present case considered all of the factors listed in Mabus and found that, as to the first prong of Mabus, the nude photographs of the Son and other questionable conduct by Mike constituted "a substantial and material change in circumstances." As to the second Mabus prong, the chancellor found that while the "substantial and material change in circumstances may not have at this time adversely affected the child, . . . this Court is not obligated to wait until such adverse change has occurred."[2] Under the third prong of Mabus, the chancellor thoroughly considered and discussed the Albright factors in finding that the best interests of the Son would be served by placing physical custody with the Father. We cannot find that the chancellor's findings of fact and conclusions of law were clearly erroneous nor do we find that an erroneous legal standard was applied. Accordingly, the Court finds that the Mother's issue is without merit.
II. WHETHER THE CHANCELLOR FAILED TO ADDRESS THE APPLICABLE LAW RELATING TO SIBLINGS AND CUSTODY
¶ 20. The Mother argues that the chancellor abused his discretion and/or committed manifest error when he failed to acknowledge the legal presumption that siblings should be separated only in extraordinary circumstances and failed to acknowledge the guardian's testimony about the close emotional relationship between the Son and his half-brother.
¶ 21. None of the cases cited by the Mother holds that siblings cannot be separated. These cases hold that this is but one factor, usually in the context of Albright, to be considered by the court in matters of custody. See Sellers v. Sellers, 638 So.2d 481, 484 (Miss.1994); Steverson v. Steverson, 846 So.2d 304, 306(¶ 10) (Miss.Ct.App.2003); McWhirter v. McWhirter, 811 So.2d 397, 399(¶ 7) (Miss. Ct.App.2001); Moore v. Moore, 757 So.2d 1043, 1050(¶ 32) (Miss.Ct.App.2000).
¶ 22. In Sparkman v. Sparkman, 441 So.2d 1361, 1362 (Miss.1983) (quoted in Sellers, 638 So.2d at 484), the court noted that it "has never adopted any per se rule to the effect that children should not be separated, in the absence of a showing of absolute necessity for the child's welfare. . . ." There was no such showing in this case.
¶ 23. There was no requirement that the chancellor specifically address the question of siblings and custody. This is not a separate Albright factor but a question which the chancellor may consider along with the best interest of the child. See Albright, 437 So.2d at 1005. We find no error on the part of the chancellor.
III. WHETHER THE CHANCELLOR COMMITTED ERROR IN THE ADMISSION AND EXCLUSION OF EVIDENCE
¶ 24. Since several of the Mother's issues concern whether the chancellor committed error in the admission of evidence, particularly in the form of testimony, these issues will be discussed together.
*662 ¶ 25. The rule is that the admissibility of evidence rests within the chancellor's discretion, and the Court will not reverse a chancellor's ruling unless his judicial discretion is abused. Hall v. State, 611 So.2d 915, 918 (Miss.1992).

ALLOWING TESTIMONY FROM THE STEP-GRANDMOTHER
¶ 26. The Mother argues that the chancellor committed manifest error when he allowed testimony from her step-mother[3] concerning photographs taken of the Son and his half brother. The Maternal Step-Grandmother testified that the Son was upset by the photographs.
¶ 27. The two photographs of the Son and his younger half brother were allowed to be introduced into evidence and showed the two children's naked torsos at bath time. The photos were admitted into evidence during the testimony of the Father. The Step-Grandmother later testified that the Son had shown her and her husband (the maternal grandfather) the photographs and identified Mike as the person who took the pictures. She testified further that the Son appeared to be upset by the photographs.
¶ 28. The Father's trial counsel argued that the Step-Grandmother's testimony recalling the Son's statement identifying Mike as the photographer was properly admitted under M.R.E. 803(25), which provides:
(25) Tender Years Exception. A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
The chancellor agreed that the photographing of the Son's genitals was a form of sexual abuse for purpose of the rule. Here, the Son did not testify nor was there a finding of unavailability which appears of record; however, the testimony of the Step-Grandmother was allowed into evidence.
¶ 29. The Mother argues on appeal that the requirements for application of the tender years exception were not met in this case because: (1) the mere taking of nude photos of a young child at bath time does not constitute an "act of sexual contact performed with or on" the Son, (2) the chancellor failed to find that the "time, content, and circumstances of the statement provide substantial indicia or reliability," and (3) the Son did not testify at trial and the chancellor failed to find that the Son was unavailable to testify. See M.R.E. 803(25). We agree that the chancellor erred by citing Rule 803(25) as the basis for allowing the Step-Grandmother's testimony regarding the Son's identification of Mike as the person who took the photographs at issue. We need not decide whether the taking of the photographs amounted to "sexual contact" within the meaning of Rule 803(25), as the chancellor failed to find that the Son was unavailable pursuant to subsection (b)(2) of the rule. *663 See J.L.W.W. v. Clarke County Dep't of Human Servs., 759 So.2d 1183 (Miss.2000) (affirming the decision of this Court to remand for new trial a case in which the tender years exception was applied without an adequate finding of unavailability). Accordingly, the chancellor abused his discretion by allowing the Step-Grandmother to testify regarding the Son's statement identifying Mike as the photographer.
¶ 30. The Father in his appellate brief recognizes that the specific rule used by the court in allowing the testimony into evidence regarding the photographs poses some problem. He proposes as an alternative Rule 803(24) which is the catch-all provision of the hearsay rule and allows for admission of a hearsay statement not specifically covered by the other exceptions. He also cites the well established and familiar rule that where the trial court reaches the proper result it does not matter upon what basis that result was reached, i.e., the court reached the right conclusion for the wrong reason. See Towner v. State, 837 So.2d 221 (Miss.Ct. App.2003). We are not persuaded by this argument.
¶ 31. First, the comment to Rule 803(24) indicates that the catch-all provision should not be utilized with "unfettered discretion which could ultimately devour the hearsay rule." See also Mitchell v. State, 539 So.2d 1366, 1370 (Miss.1989) (stating that "use of the `catchall' should be carefully considered and applied rarely, so as not to devour the hearsay rule"). Second, the applicability of this exception requires the use of discretion with respect to facts which are not apparent from the record. For example, we cannot determine from the record whether the Son's statement "is more probative on the point for which it [was] offered than any other evidence which [the Father could] procure through reasonable efforts," as is required by the Rule. Nor is it apparent whether the Father gave advance notice to the Mother that he intended to introduce the Son's statement via the Step-Grandmother's testimony, which is another prerequisite for application of the catch-all exception. However, despite the fact that the chancellor erred in admitting testimony regarding the Son's statement of identification pursuant to the tender years exception, and notwithstanding the fact that we cannot conclude from the record whether the catch-all provision would provide an alternative basis of admission, we find that any error by the chancellor was harmless.
¶ 32. The only portion of the Step-Grandmother's testimony which should have been excluded as hearsay was the testimony recalling the Son's identification of Mike as the person who took the nude photographs. During the line of questioning in which this testimony was elicited, the Step-Grandmother also testified that the Son voluntarily brought the pictures to her, and further, that "[h]e acted like he was upset about them."[4] Even without the Son's statement identifying Mike as the photographer, the photographs themselves, as well as the Step-Grandmother's impression that the Son was "upset about them," clearly support the chancellor's conclusion that these photographs were inappropriate and indicative of conditions in the custodial home which were adverse to the Son's best interests. In light of this conclusion, and considering other evidence of Mike's inappropriate conduct contained in the record, we find that the admission of testimony regarding the Son's statement *664 of identification, although error, was harmless error.

ALLOWING TESTIMONY FROM THE GRANDMOTHER
¶ 33. The Mother also argues that the chancellor erred when he relied upon the uncorroborated testimony of her ex-mother-in-law, the Paternal Grandmother, as to statements made by the Son at least five years earlier. The testimony at issue in this assignment of error was elicited during the Paternal Grandmother's recollection of events that transpired on a day in which she went to pick the Son up for a wedding. The challenged testimony occurred during the following exchange:
Q. [BY FATHER'S ATTORNEY]: On this particular occasion, what was [the Son's] demeanor when he came out to the car?
A. He looked frightened, and he said, [Paternal Grandmother], [Mike] was choking Mama and he wouldn't stop.
. . . .
Q. [] I'm sorry, continue.
A. He got into the car and immediately said, [Mike] was choking Mama and he wouldn't stop.
. . . .
Q. What was the child's demeanor while he was talking?
A. He was very frightened. He was crying. And I said, what did you do? He said, I asked  I told him to stop choking my mama and he wouldn't stop. I said, well, what happened? He said, well, first Mama [threw] a watch at [Mike], and then [Mike] pushed Mama on his bed and started choking her. He was choking her. And he said, then I got a little bit mad, and then Mama was very mad on the couch. That's I guess  anyway, that's what he said.
¶ 34. The Mother contends that the court should not have adopted the "excited utterance" exception under Mississippi Rule of Evidence 803(2) in allowing admission of the preceding testimony. Rule 803(2) excepts from the hearsay rule "statement[s] relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The rationale for the excited utterance exception is best explained by the comment to Rule 803(2):
The underlying theory of the excited utterance exception is that circumstances may create such an excited condition that the capacity for reflection is temporarily impeded and that statements uttered in that condition are thus free of conscious fabrication. . . . [T]he essential ingredient is spontaneity. With respect to time element, the issue is the duration of the excited state. This, depending on the exact circumstances of a case, can vary greatly. The declarant need not be a participant but only an observer of the event which triggered the excitement. An excited utterance need only "relate" to the startling event, and, therefore, the scope of the subject matter of the statement may be fairly broad.
¶ 35. The Paternal Grandmother testified that the Son was "very frightened" and that he was crying when he emerged from his home and told her what had occurred between his mother and Mike. From our review of the challenged testimony, it appears that the Son's statement was both spontaneous and made while he was still under the stress and excitement caused by the event. At the very least, we cannot say that the trial court abused its discretion by allowing the Paternal Grandmother's testimony repeating the Son's statements regarding the choking incident. "The competency of excited *665 utterances is a matter largely discretionary with our trial courts." Stokes v. State, 797 So.2d 381, 386(¶ 14) (Miss.Ct. App.2001) (quoting Davis v. State, 611 So.2d 906, 914 (Miss.1992)). We find no abuse of discretion with respect to this issue and, therefore, this assignment of error is without merit.

ALLOWING TESTIMONY FROM MIKE'S EX-WIFE AND FORMER LOVER
¶ 36. The Mother next complains that it was an abuse of discretion and/or manifest error for the chancellor to admit the testimony of Rita, Mike's ex-wife, and of Susan, his former lover and the mother of another one of his children. The Mother contends that this was "about an old case having nothing to do with this Child, this Mother, or this custodial home." The contention is that this testimony only concerned the contact of the stepfather as it related to a different child, the stepfather's daughter.
¶ 37. What the Mother failed to note is that the testimony confirmed that during these earlier relationships Mike was habitually naked in front of neighbors, friends, and babysitters even when his own female child was present. While the testimony would not have been proper under Rule 404(a) "for the purpose of proving that he acted in conformity therewith in a particular occasion," the testimony was admissible to show the general nature of the stepfather's character. Mississippi Rule of Evidence 405(b) does allow for specific instances of conduct: "In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct."
¶ 38. As noted by the Father, there is no Mississippi case law specifically addressing this issue, but cases from other jurisdictions confirm that similar evidence is admissible. See Leisure v. Wheeler, 828 N.E.2d 409, 418-19 (Ind.Ct.App.2005) (criminal history of the ex-wife's current husband as admissible character evidence in proceeding to modify custody); see Stone v. Steed, 54 Ark.App. 11, 923 S.W.2d 282 (1996) (evidence of misdemeanor convictions of third parties at the mother's house reflected on the mother's morality and was relevant to the best interest of the child and who should have custody); In re K.L.R., 162 S.W.3d 291 (Tex.App.2005) (evidence of a parent's arrests is admissible evidence in a child custody proceeding).
¶ 39. In Leisure, the Indiana Court of Appeals recited the familiar rule that where "a person's character is an issue in the case, character evidence has independent relevance and is not offered for the prohibited purpose of showing conforming conduct." Leisure, 828 N.E.2d at 419 (citing 12 Robert Lowell Miller, Jr., Indiana Practice § 404.103, at 339 (2d ed.1995)). The Leisure court further stated that "[w]hen character has been put in issue by the pleadings as typically occurs in child custody cases, evidence of character must be brought forth." Id. (citing IA John Henry Wigmore, Wigmore on Evidence § 69.1, at 1457 (Tillers rev. 1983) ("The right of a parent to retain custody of a child may depend on a finding of the fitness of that person as a parent. In these cases, character evidence is of course admissible since what is at issue in the case is a character trait, and if the issue [is] to be resolved on the basis of evidence, evidence of character must be admitted.")). The Leisure court concluded that "Mother's current husband's character is a material issue . . . because if custody were to be modified, then he would be living in the same household as [the child] and helping to raise him. Therefore, we cannot say that the trial court erred by admitting evidence *666 of Mother's current husband's criminal history." Id.
¶ 40. In the instant case, evidence of Mike's past conduct was not introduced to prove that he acted in conformity with that conduct on any specific occasion. Rather, it was introduced to demonstrate Mike's general character as that character relates to Mike's and the Mother's moral fitness, as well as to demonstrate that Mike's presence in the custodial home constituted a material and adverse change in circumstances.[5] Accordingly, because the determination of the Son's best interests in this case necessarily required scrutiny of Mike's character, we find that the chancellor did not err in admission of the testimony concerning Mike's past conduct. There is no abuse of discretion and the assignment of error is rejected.

NOT ALLOWING EVIDENCE FROM THE INITIAL CUSTODY PROCEEDINGS
¶ 41. The Mother argues that the chancellor misconstrued and misapplied Lackey v. Fuller, 755 So.2d 1083 (Miss. 2000) and committed manifest error in refusing to consider the circumstances of the initial custody proceeding, specifically the Father's alleged history of physical abuse of the Mother. The Mother argues that Mississippi Code Annotated sections 93-23-43 and XX-XX-XXX mandate that the chancellor must consider such evidence in any modification hearing.[6]
¶ 42. In Lackey, the chancellor punished the mother for her pre-divorce behavior. The Mother contends that the chancellor in this case is punishing the stepfather for conduct which occurred years before their marriage in a custody case involving a different child. The Mother also contends that the divorce proceedings in Shelby County, Tennessee, were required to show that the Father was physically abusive to his ex-wife. The Mother also seems to insinuate that the failure of the Father's current wife to testify also was significant to show that the abuse was continuing. Neither of these arguments are supported by any authority before the Court and are specifically rejected as improper argument to the Court. The Mother was free to offer her own evidence and testimony at the custody hearing concerning the Father's character. Her failure to do so cannot give rise to an adverse inference against the Father nor form the basis of an assignment of error with respect to the chancellor's decision. Accordingly, this assignment of error is without merit.
IV. WHETHER THE CHANCELLOR'S FINDINGS AND CONCLUSIONS ARE SUPPORTED BY THE RECORD
¶ 43. The Mother argues that the chancellor's conclusions of fact and law are not supported by competent, substantial and credible evidence in the record. The Mother cites numerous facts and conclusions which she contends are not supported by the record.
¶ 44. Whenever a chancellor's decision is based on credible evidence, this Court will affirm that decision. Williams, *667 656 So.2d at 330; Chamblee, 637 So.2d at 860. Or differently stated, this Court may reverse a chancellor's findings of fact only when there is "no substantial evidence in the record" justifying his findings. Hensarling, 824 So.2d at 586(¶ 7) (quoting Henderson v. Henderson, 757 So.2d 285, 289 (Miss.2000)).
¶ 45. Basically, the Mother simply disagrees with the chancellor's findings of fact and conclusions. First and foremost, there was ample evidence of the stepfather's repeated nudity, together with his own testimony that he is "usually naked when . . . doing [his] active daily living skills." Contrary to the Mother's contention, Mike's nudity was ongoing and not limited to "isolated incidents."
¶ 46. There was also evidence that the Son was disturbed by the nude photographs, that the Son was upset about Mike choking the Mother, that the Son had strong emotional ties to the Father, that the Father's employment situation was stable and flexible, and that the moral fitness issue under Albright favored the Father. While there was conflicting testimony, there was also testimony which supported each of these factual findings by the chancellor.
¶ 47. The Court has reviewed the chancellor's findings and concludes that there was sufficient credible evidence to support the chancellor. Although we find that the chancellor incorrectly allowed testimony of the Step-Grandmother repeating the Son's identification of Mike as the photographer of the nude photographs, we find that this error was harmless. The nature of the photographs, as well as the fact the Son was upset about the pictures, speak to the inappropriate nature of the pictures and support the chancellor's findings of fact and conclusions of law. Even without the Son's identification, there was sufficient evidence for the chancellor to conclude that the photographs were taken in the custodial home, and that the photographs were inappropriate. Accordingly, the chancellor's findings and conclusions are supported by the record and any argument to the contrary is without merit.

CONCLUSION
¶ 48. For the foregoing reasons, we find no reversible error and affirm the judgment of the Desoto County Chancery Court.
¶ 49. THE JUDGMENT OF THE CHANCERY COURT OF DESOTO COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Pseudonyms are being used throughout as this is a confidential case.
[2] To support the conclusion that custody may be modified where adverse conditions exist although the child has not yet been adversely affected, the chancellor cited Riley v. Doerner, 677 So.2d 740, 744 (Miss.1996). There, the Mississippi Supreme Court stated "that where a child living in a custodial environment clearly adverse to the child's best interest, somehow appears to remain unscarred by his or her surroundings, the chancellor is not precluded from removing the child for placement in a healthier environment." Id.
[3] Although the Mother refers to D.G. as her "ex-Stepmother," the record indicates that D.G. was married to the Mother's father at the time the statements were made and at the time of his death. D.G. will be referred to as the Maternal Step-Grandmother or Step-Grandmother in the opinion.
[4] We note that this testimony reflected the Step-Grandmother's recollection of the Son's actions and emotional state with respect to the photographs. Accordingly, this testimony is not hearsay.
[5] We note also that Mississippi Rule of Evidence 404(b) allows the introduction of character evidence by way of evidence of "other crimes, wrongs, or acts . . . for other purposes such as . . . absence of mistake or accident." Evidence that Mike had exposed himself to others in the past would be relevant to demonstrate that subsequent indecent exposures were not inadvertent or accidental.
[6] Section 93-23-43 was repealed effective July 1, 2004; however, section 93-27-402 (Rev.2004) provides that actions involving child custody commenced prior to July 1, 2004, would be "governed by the law in effect at the time the motion or other request was made."